No. 66,350

MARSHA A. MARTINDALE, *Appellant*, v. ROBERT T. TENNY, M.D.,
P.A., and MIDWEST NEUROSURGERY ASSOCIATES, *Appellees*, and
ROBERT T. TENNY, M.D., *Appellee/Cross-appellant*.

(829 P.2d 561)

Opinion filed April 10, 1992.

*H. Reed Walker*, of Barnett, Walker & O'Connor, Chartered, of Overland Park, argued the cause, and *James M. Barnett*, of the same firm, was with him on the brief for appellant.

*Phillip P. Ashley*, of Williamson & Cubbison, of Kansas City, argued the cause, and *M. Warren McCamish*, of the same firm, was with him on the brief for appellees and cross-appellant.

The opinion of the court was delivered by

HOLMES, C.J.: This is a medical malpractice case based upon alleged acts of negligence by Robert T. Tenny, M.D. Plaintiff, Marsha A. Martindale, originally filed suit naming as defendants Robert T. Tenny, M.D., P.A., a professional corporation, and Midwest Neurosurgery Associates, a business association not specifically described. The named defendants (hereafter the corporate defendants) filed motions for summary judgment asserting that K.S.A. 40-3403(h) precluded any recovery against them based

upon vicarious liability. The trial court sustained defendants' motions for summary judgment. Martindale timely appeals the trial court order granting summary judgment in favor of the corporate defendants.

At the time summary judgment was granted the corporate defendants, the trial court allowed Martindale to amend her petition to name Robert T. Tenny, M.D. as an individual defendant. After Martindale amended her petition asserting a cause of action against Dr. Tenny individually, he filed a motion for summary judgment, claiming the statute of limitations had run as to him. The trial court denied his motion for summary judgment, and Dr. Tenny timely cross-appeals from that order.

The facts relevant to the issues on appeal are not in dispute. On September 8, 1981, Marsha A. Martindale sought medical attention for tingling in her left hand and pain in her left arm. She was referred to Midwest Neurosurgery Associates, where Dr. Tenny examined her. On September 20, 1981, Dr. Tenny admitted Martindale to Shawnee Mission Medical Center for exploratory surgery. On September 23, 1981, Dr. Tenny performed surgery on Martindale, involving exploration of the brachioplexus, lysis of adhesions, and resection of a portion of her left first rib. On September 27, 1981, the hospital released Martindale. However, she continued to experience pain in her left shoulder, emanating from her left collarbone. Martindale contends she now suffers from chronic shoulder pain and disability.

On September 22, 1983, within the applicable statute of limitations, Martindale, pursuant to Supreme Court Rule 142 (1991 Kan. Ct. R. Annot. 119) and the Medical Malpractice Screening Panel Act, K.S.A. 65-4901 *et seq.*, filed pleadings with the district court requesting that a medical malpractice screening panel (hereafter "the panel") be convened to review her claim.

Nearly five years later, on July 20, 1988, the panel issued its opinion. The record does not disclose any reason for the unusually long delay. The panel concluded, in part:

"[T]here was a departure from the applicable standard of care which, within reasonable medical certainty resulted in non-union of the clavicle.

"a. It is the opinion of the panel that the standard practice for neurosurgeons in this community, where transection of the clavicle is indicated, is to obtain consultation of an orthopedic specialist at or immediately following the surgery. The materials submitted by the parties indicate that, empirically, where there is proper orthopedic management following severance of the clavicle, the incidence of non-union is relatively small. (See materials cited. Para. 1(e) & (f) above). Immediate post operative orthopedic management under such circumstances however, is standard practice in this community.

"b. It is the further opinion of the panel that orthopedic consultation would have resulted in efforts in the immediate post operative period to monitor the reunion of the transection by x-rays, to brace or immobilize the structure and to avoid premature use or exercise. (See Articles cited Para. 1 (e) & (f) above). Such measures would probably have resulted in reunion."

On August 12, 1988, Martindale filed a medical malpractice petition in the District Court of Johnson County naming Robert T. Tenny, M.D., P.A., and Midwest Neurosurgery Associates as defendants. Although Dr. Tenny was referred to in the body of the petition as a defendant, it did not name Dr. Tenny, individually, as a defendant in the caption. K.S.A. 60-210(a). On August 17, 1988, two summonses naming Robert T. Tenny, M.D., P.A., and Midwest Neurosurgery Associates were personally served on Dr. Tenny as agent for those defendants. No attempt was made to secure a summons for, or to serve, Dr. Tenny personally.

On September 6, 1988, Robert T. Tenny, M.D., P.A., and Midwest Neurosurgery Associates filed answers wherein they raised several affirmative defenses. Defendants asserted that Martindale's claims against each of the two named defendants were barred by the statute of limitations, that Dr. Tenny was not included as a defendant in the petition, and that any claims Martindale intended to assert against Dr. Tenny, in his individual capacity, would also be barred by the statute of limitations. Defendants further asserted that as Martindale's claims against the corporate defendants were based solely on the theory of vicarious liability, the petition failed to state a claim upon which relief could be granted because vicarious liability against health care providers had been abrogated by K.S.A. 40-3403(h).

On May 30, 1990, the corporate defendants filed motions for summary judgment. Plaintiff timely filed a response. On October

2, 1990, the district court heard oral arguments on defendants' motions and granted their motions for summary judgment. The trial court held that K.S.A. 40-3403(h) abrogated vicarious liability for all health care providers who came within the terms of the statute and precluded any cause of action against Robert T. Tenny, M.D., P.A., and Midwest Neurosurgery Associates based solely upon vicarious liability. The court further noted that the petition in this case was filed in 1988, that K.S.A. 40-3403(h) became effective "sometime in 1986," and that the "clear and unambiguous" language of K.S.A. 40-3403(h) provided that all claims filed on or after the effective date of the act were subject to the act.

The trial court then sustained Martindale's oral motion to amend her pleadings to name as a defendant Dr. Tenny in his individual capacity.

A journal entry was filed, granting defendants' motions for summary judgment and granting Martindale's motion for leave to file an amended petition naming Dr. Tenny, individually, as a defendant. On October 10, 1990, Martindale filed an amended petition naming Dr. Tenny as a defendant and on October 24, 1990, Dr. Tenny filed an answer asserting, *inter alia*, that the claims against him were barred by the statute of limitations.

On November 2, 1990, Dr. Tenny filed a motion for summary judgment, alleging that the two-year and four-year statutes of limitation set forth in K.S.A. 60-513(a)(7) and K.S.A. 60-513(c) barred the action against him. Martindale responded by filing a memorandum in opposition to defendant's motion for summary judgment. On November 29, 1990, the trial court heard oral arguments on the motion, and summary judgment in favor of Dr. Tenny was denied.

The journal entry denying Dr. Tenny's motion was filed March 5, 1991. The district court further found, pursuant to K.S.A. 1990 Supp. 60-2102(b), that its order involved controlling questions of law to which there was substantial ground for difference of opinion and that an immediate appeal from the order would materially advance the ultimate termination of the litigation. The district court ordered all proceedings stayed pending appeal.

Subsequently, the Kansas Court of Appeals granted permission for an interlocutory appeal from the district court's orders. Mar-

tindale appeals from the district court's October 10, 1990, order granting summary judgment to the corporate defendants. Defendant Tenny cross-appeals from the order dated November 29, 1990, denying his motion for summary judgment.

This case was transferred to the Kansas Supreme Court pursuant to K.S.A. 20-3018(c).

We turn first to the appeal of the plaintiff in which the single broadly stated issue is whether the trial court erred in granting summary judgment to the two corporate defendants, Robert T. Tenny, M.D., P.A., and Midwest Neurosurgery Associates.

In granting summary judgment in favor of the corporate defendants, the trial court ruled that the action was barred by K.S.A. 40-3403(h). The statute provides:

"A health care provider who is qualified for coverage under the fund shall have no vicarious liability or responsibility for any injury or death arising out of the rendering of or the failure to render professional services inside or outside this state by any other health care provider who is also qualified for coverage under the fund. *The provisions of this subsection shall apply to all claims filed on or after the effective date of this act.* [July 1, 1986.]" (Emphasis added.)

In doing so, the trial judge stated:

"[T]his cause of action was filed August 12, 1988. I'm going to rule, as a matter of law, that K.S.A. 40-3403(h) is clear and unambiguous, and that section provides that all claims filed on or after the effective date of the act are subject to that act."

The trial court, under the facts of this case, apparently interpreted "claims filed" to mean the filing of a petition for damages in a civil court action.

In interpreting a statute, certain basic principles apply.

"Interpretation of a statute is a question of law, and it is the function of the court to interpret a statute to give it the effect intended by the legislature. *State, ex rel., v. Unified School District,* 218 Kan. 47, 49, 542 P.2d 664 (1975). It is a fundamental rule of statutory construction to which all other rules are subordinate that the intent of the legislature governs when that intent can be ascertained. *State v. Sexton,* 232 Kan. 539, 657 P.2d 43 (1983)." *Director of Taxation v. Kansas Krude Oil Reclaiming Co.,* 236 Kan. 450, 455, 691 P.2d 1303 (1984).

"When a statute is plain and unambiguous the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Randall v. Seemann,* 228 Kan. 395, Syl. ¶ 1, 613 P.2d 1376 (1980).

Defendants correctly argue, and plaintiff does not dispute, that K.S.A. 40-3403(h) abrogated the common-law doctrine of vicarious liability in medical malpractice cases involving multiple health care providers qualified for coverage under the health care stabilization fund (Fund). Robert T. Tenny, M.D., P.A., and Midwest Neurosurgery Associates allege they were health care providers qualified for coverage under the Fund at the time of Martindale's injuries and plaintiff does not dispute their contention. Nor is it disputed that Dr. Tenny, individually, was a health care provider with coverage under the Fund. Further, defendants point out that no independent acts of negligence were alleged by Martindale against the corporate defendants and that the only asserted causes of action against them are based upon the theory of vicarious liability under the doctrine of respondeat superior.

The issue is not whether K.S.A. 40-3403(h) abrogates vicarious liability for health care providers but whether the statute applies to these corporate defendants under the facts of this case.

Martindale contends the statute does not apply to this case. Her principal argument in support of this position ignores the express language of K.S.A. 40-3403(h), and instead she contends that K.S.A. 40-3403(h) only applies to causes of action which "arose" after July 1, 1986, as opposed to causes of action "filed" after July 1, 1986. To support this interpretation, Martindale relies upon some unfortunate language in one paragraph extracted from *Leiker v. Gafford*, 245 Kan. 325, 778 P.2d 823 (1989), hereafter *Gafford I*, decided after the passage of K.S.A. 40-3403(h).

In *Gafford I*, Shawn A. Leiker sustained severe personal injuries and eventually died as a result of an overdose of spinal anesthetic administered during a Cesarean section delivery. On August 4, 1983, her husband filed a personal injury lawsuit on her behalf against Gafford, the anesthetist, and his professional corporation, and against Marshall, the obstetrician, and his professional corporation. K.S.A. 40-3403(h) became effective July 1, 1986. Mrs. Leiker died December 14, 1987, and on December 22, 1987, her husband filed an amended petition adding a claim for wrongful death.

The jury determined that Gafford was 90% at fault and Marshall was 10% at fault for the plaintiff's injuries and resulting death.

The jury specifically found one or more independent acts of negligence on the part of Marshall. In answer to a special question on the verdict form, the jury also determined that Marshall was legally responsible for one or more negligent acts of Gafford.

On appeal, Marshall argued, *inter alia*, that K.S.A. 1988 Supp. 40-3403(h) precluded vicarious liability for the wrongful death judgment. In addressing this issue, the Kansas Supreme Court noted:

"Marshall asked the trial court to instruct the jury that, as a matter of law, Marshall and his professional corporation could not be vicariously liable for the misconduct of Gafford, citing [K.S.A. 40-3403(h)]. *The trial court correctly noted that the personal injury action arose prior to the effective date of the statute, and therefore the statute, if applicable at all, could only apply to the wrongful death claim.*" 245 Kan. at 358. (Emphasis added.)

In interpreting that paragraph, Martindale argues that "the test identified by the Kansas Supreme Court is not when the suit was filed, but when the cause of action *arose*." In short, Martindale contends that K.S.A. 40-3403(h) does not apply to any cause of action which arose prior to July 1, 1986.

Martindale then applies this interpretation of K.S.A. 40-3403(h) to the facts of this case. She argues that although the petition was not filed until August of 1988, she is still entitled to assert the theory of vicarious liability as to the corporate defendants because her cause of action "arose" when Dr. Tenny negligently performed surgery on her in 1981, prior to the effective date of K.S.A. 40-3403(h).

While plaintiff's basic premise that K.S.A. 40-3403(h) does not apply to this case may be correct, and we think it is, her reliance upon *Gafford I* is misplaced. At the outset, it must be conceded that the language in *Gafford I* referring to when "the personal injury action arose" is clearly erroneous. The clear wording of the statute is that it will apply to "all claims filed on or after the effective date" of the statute, not to when the claim arose. Unfortunately, erroneous language similar to that in *Gafford I* was repeated in a later action involving the same parties. *Leiker v. Gafford*, 249 Kan. 554, 556-557, 819 P.2d 655 (1991), hereafter *Gafford II*.

In neither *Gafford I* nor *Gafford II* was the erroneous language controlling as to any issue before the court. Therefore, it was

dicta and does not constitute precedent on the issue now before us. We specifically disapprove the erroneous language in both *Gafford I* and *Gafford II* to the effect that K.S.A. 40-3403(h) does not apply to claims which arose prior to the effective date of the act. The controlling language of the statute is: "The provisions of this subsection [K.S.A. 40-3403(h)] shall apply to all claims *filed* on or after the effective date of this act."

However, plaintiff's misplaced reliance on the *Gafford* cases does not dispose of the issue now before us. The issue is whether the filing of the request for a medical malpractice screening panel to consider plaintiff's claim was sufficient to come within the "claims filed" provision of K.S.A. 40-3403(h). To resolve this issue, review of the pertinent provisions of the Medical Malpractice Screening Panel Act, K.S.A. 65-4901 *et seq.*, is appropriate. Before turning to that act, which was first adopted in 1976, we note the rather anomalous fact that in 1987 the legislature enacted similar, if not identical, legislation found at K.S.A. 1991 Supp. 60-3501 *et seq.* None of the parties make any reference to the act in Chapter 60 of Kansas Statutes Annotated and, as the provisions of both acts are, for all practical purposes, identical, we will limit our references to the earlier act in Chapter 65 of Kansas Statutes Annotated.

K.S.A. 65-4901 provides in part:

"If a petition is filed in a district court of this state claiming damages for personal injury or death on account of alleged medical malpractice of a health care provider and one of the parties to the action requests, by filing a memorandum with the court, that a medical malpractice screening panel be convened, the judge of the district court or, if the district court has more than one division, the administrative judge of such court shall convene a medical malpractice screening panel, hereafter referred to as the 'screening panel.' If a petition is filed in a district court of this state claiming damages for personal injury or death on account of alleged medical malpractice of a health care provider and none of the parties to the action requests that a screening panel be convened, the judge may convene a screening panel upon the judge's own motion. If a claim for damages for personal injury or death on account of alleged medical malpractice of a health care provider has not been formalized by the filing of a petition, any party affected by such claim may request, by filing a memorandum with the court, that a screening panel be convened, and if such request is made the judge of the district court or, if the district court has more than one division, the administrative judge of such court shall convene a screening panel."

K.S.A. 1991 Supp. 65-4902 provides for notice to the parties and then reads:

"If the plaintiff and the defendant or, if no petition has been filed, the claimant and the party against whom the claim is made are unable to jointly select a health care provider within 10 days after receipt of notice that a screening panel has been convened, the judge of the district court or, if the district court has more than one division, the administrative judge of such court shall select such health care provider."

K.S.A. 65-4903 specifies the procedure to be followed by the screening panel while K.S.A. 1991 Supp. 65-4904 governs the preparation of the screening panel opinion, the notice to be given after an opinion has been reached and related matters.

K.S.A. 65-4905 states in its entirety:

"In the event that one or more of the parties rejects the final determination of the screening panel, the plaintiff may proceed with the action in the district court."

K.S.A. 65-4906 and K.S.A. 1991 Supp. 65-4907 provide immunity for the members of the screening panel, govern the compensation and payment of expenses of the panel members, and provide for the assessment of the costs of the proceeding.

Finally, K.S.A. 65-4908 reads:

"In those cases before a screening panel which have not been formalized by filing a petition in a court of law, the filing of a memorandum requesting the convening of a screening panel shall toll any applicable statute of limitations and such statute of limitations shall remain tolled until thirty (30) days after the screening panel has issued its written recommendations."

The Medical Malpractice Screening Panel Act was enacted by the legislature to provide for an early resolution of many medical malpractice claims without the expense, and often inordinate delay, of actual litigation. K.S.A. 65-4901 specifically recognizes a distinction between actual actions for damages commenced by the filing of a petition in district court and proceedings for consideration of claims by a panel prior to the institution of any formal court action for damages. K.S.A. 1991 Supp. 65-4902 refers to the plaintiff and defendant when a petition has been filed and the claimant and party against whom the claim is made when no formal court action has been commenced.

K.S.A. 65-4905 contemplates there will be no formal court action once a screening panel has been requested and K.S.A. 65-

4908 tolls any applicable statute of limitations "until thirty (30) days after the screening panel has issued its written recommendations." Thus the act contemplates that no formal court action should be filed, or if an action has been filed that it be held in abeyance, until the parties have exhausted the screening panel procedure.

The problem that arises in the present case is that the screening panel did not timely perform its required duties, and in the interim K.S.A. 40-3403(h) became law. The plaintiff and the corporate defendants, presumably in good faith, relied upon and complied with the screening panel act in seeking to resolve the plaintiff's claim, without the necessity of her filing a formal civil action, only for plaintiff to find that when the panel ultimately reached a decision, her rights had allegedly been cut off by K.S.A. 40-3403(h). Thus it becomes necessary to attempt to reconcile the provisions of K.S.A. 40-3403(h) with those of the screening panel act in K.S.A. 65-4901 *et seq.*

The defendants contend that under the facts of this case the words "claims filed on or after [July 1, 1986]" refer strictly to the filing of a civil action, and as the petition in this case was filed after July 1, 1986, the statute would bar any claim based upon vicarious liability. On the other hand, the plaintiff contended at oral argument before this court that the filing of her claim before the screening panel constituted a "claim filed" long prior to the effective date in K.S.A. 40-3403(h), and thus the bar against vicarious liability did not apply as to these defendants. We conclude the plaintiff is correct.

K.S.A. 40-3403(h) and the Medical Malpractice Screening Panel Act, K.S.A. 65-4901 *et seq.*, are part of an attempt by the legislature to alleviate the perceived medical malpractice crisis first addressed by the adoption of the Health Care Provider Insurance Availability Act, K.S.A. 40-3401 *et seq.*, in 1976. As such, the provisions of conflicting or overlapping statutes within the two acts are to be read together. While perhaps not strictly in pari materia, as that term is sometimes narrowly construed, the statutes must still be read together in an attempt to reconcile their differences and reach sensible and rational results. In *Clark v. Murray*, 141 Kan. 533, 41 P.2d 1042 (1935), we held:

"It is a cardinal rule of construction that all statutes are to be so construed as to sustain them rather than ignore or defeat them; to give them operation if the language will permit, instead of treating them as meaningless." Syl. ¶ 1.

"Although statutes may be not strictly *in pari materia*, in the construction and interpretation of those relating to the same subject matter or having the same general purpose, reference may be made to them to determine the intent of the legislature as to such subject matter or purpose." Syl. ¶ 2.

73 Am. Jur. 2d, Statutes § 189 states:

"Although there may be statutory provisions which, in a sense, relate to the same matter and yet are not in pari materia, the general rule is that statutes or statutory provisions which relate to the same person or thing, or to the same class of persons or things, or to the same or a closely allied subject or object, may be regarded as in pari materia. Statutes which are parts of the same general scheme or plan, or are aimed at the accomplishment of the same results and the suppression of the same evil, are also considered as in pari materia. On the other hand, statutes which have no common aim or purpose, and which do not relate to the same subject, thing, or person, are not in pari materia. Statutes have been regarded not to be in pari materia where they are inconsistent. Statutes or sections which expressly refer to each other are in pari materia, but the fact that statutes contain no reference to each other does not prevent them from being in pari materia. It has also been held that the fact that one of the statutes is a special or particular, and the other a general, one, does not preclude them from being in pari materia."

In the instant case, Martindale had filed her claim seeking to proceed with a medical malpractice screening panel long before the statute abrogating the vicarious liability of health care providers was enacted. It is to be noted that, in general, statutes of limitation and statutes of repose and many other statutes refer to commencing civil actions, actions being maintained, causes of action, and similar terms more appropriate to the filing of a formal civil lawsuit. See, *e.g.*, K.S.A. 60-501 *et seq.* On the other hand, statutes referring to the filing of "claims" may be considerably broader in scope and refer not only to a claim for damages in a civil lawsuit, but also to claims before various administrative bodies, administrative law boards, and other entities.

Did the legislature intend by the enactment of K.S.A. 40-3403(h) to cut off the rights of persons who had filed claims and were proceeding under the procedure set forth in K.S.A. 65-4901 *et seq.* but had not filed an actual civil action? We think

not. If that had been the intention it could have easily been stated in the statute. Instead, the legislature chose to use the broad term "claims filed." We hold that, under the peculiar facts of this case, the filing of Martindale's request for a medical malpractice screening panel to consider a claim for malpractice constitutes a "claim filed" as contemplated by K.S.A. 40-3403(h) and thus her right to proceed against the corporate defendants on the theory of vicarious liability was preserved. The conflict generated here between the provisions of K.S.A. 40-3403(h) and K.S.A. 65-4901 *et seq.* was the direct result of the screening panel failing to do its duty and delaying its recommendations for an inordinate period of time. We conclude that when the two statutory acts are considered together, as they must be, the plaintiff's claims against the corporate defendants based upon her theory of vicarious liability were not lost. K.S.A. 65-4908 makes it abundantly clear that the filing of a request for the convening of a screening panel "shall toll any applicable statute of limitations" until 30 days after the panel has issued its recommendations. As there is no contention that Martindale did not file her lawsuit within 30 days of the issuance of the written recommendations of the screening panel, the judgment of the district court granting summary judgment to the defendants, Robert T. Tenny, M.D., P.A., and Midwest Neurosurgery Associates must be reversed.

We now turn to the cross-appeal of defendant Dr. Robert T. Tenny, as an individual, from the order of the trial court denying his motion for summary judgment.

At the outset, we will reiterate some of the pertinent facts set forth earlier in the opinion and supplement them with such additional facts as are necessary to consider the issues on the cross-appeal.

On September 23, 1981, Robert T. Tenny, M.D., performed surgery upon Martindale. On September 22, 1983, Martindale filed a request to appoint a medical malpractice screening panel. On July 20, 1988, the screening panel issued its opinion finding Dr. Tenny had failed to maintain the standard of care of neurosurgeons in the community. On August 12, 1988, Martindale filed her petition, naming as defendants Robert T. Tenny, M.D., P.A., and Midwest Neurosurgery Associates. On October 2, 1990, after the district court had sustained the corporate defendants'

motions for summary judgment, the trial court granted Martindale's motion to amend her petition to name Dr. Tenny as an individual defendant. The amended petition was filed October 10, 1990. Dr. Tenny filed an answer, and on November 2, 1990, filed a motion for summary judgment essentially claiming the action was barred by the statute of limitations. The trial court denied Dr. Tenny's motion for summary judgment. Dr. Tenny timely appeals that ruling.

The district court concluded that the statute of limitations did not operate as a bar to Martindale's claim. As the district court's judgment involved solely the interpretation of a question of law, our scope of review on appeal is unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

Generally, a medical malpractice action must be brought within the statute of limitations as provided by K.S.A. 60-513(a)(7) and (c).

K.S.A. 60-513(a)(7) reads:

"(a) The following actions shall be brought within two (2) years:

. . . .

"(7) An action arising out of the rendering of or failure to render professional services by a health care provider, not arising on contract."

K.S.A. 60-513(c) provides:

"A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall such an action be commenced more than four (4) years beyond the time of the act giving rise to the cause of action."

Martindale filed her petition against the corporate defendants on August 12, 1988, seven years after the purported negligent act giving rise to her medical malpractice claim and filed her amended petition naming Dr. Tenny, individually, on October 10, 1990, over two years after the filing of the original petition.

Dr. Tenny asserts essentially three arguments in support of his contention that the trial court erred in not granting his motion for summary judgment based upon the running of the statute of

limitations. First, Dr. Tenny asserts that Martindale's medical malpractice action against him as an individual is barred by the two-year statute of limitations found in K.S.A. 60-513(a)(7). He argues that, because he was not a named party to the screening panel procedure, K.S.A. 65-4908 did not toll the statute of limitations as to him personally. Thus, he contends the two-year statute of limitations ran as to him in 1983, and Martindale's 1988 amended petition naming him as defendant was barred by the two-year statute of limitations.

Second, Dr. Tenny maintains that the original petition filed August 12, 1988, was barred by K.S.A. 60-513(c). He argues that, by filing a request for a screening panel, Martindale did not indefinitely toll the general two-year limitation period. He relies upon the language in K.S.A. 60-513(c) "but in no event shall such an action be commenced more than four (4) years beyond the time of the act giving rise to the cause of action." He concludes that, even if the October 1990 amended petition naming him individually is allowed to relate back to the original August 1988 petition, pursuant to K.S.A. 60-513(c), the statute of limitations as to the original petition expired September 23, 1985, four years after the alleged negligent surgical act. Thus, any suit against Dr. Tenny is barred.

Finally, Dr. Tenny argues that even if the court determined that the original petition had been timely filed, K.S.A. 60-215(c) would not allow the amended petition to relate back to the date of the original petition.

In response to the arguments of Dr. Tenny, Martindale asserts that the statute of limitations was tolled by K.S.A. 65-4908 because Dr. Tenny had sufficient notice from the initial screening panel request that the claim was actually against him; that the filing of the request for a screening panel tolled the statute of limitations as to all possible defendants, whether named in the screening panel proceedings or not, until 30 days after the panel's report; and finally that as the initial petition against the corporate defendants was filed within the 30-day period of K.S.A. 65-4908, the amended petition filed over two years later naming Dr. Tenny individually relates back to the earlier petition under the provisions of K.S.A. 60-215(c).

All parties appear to concede that K.S.A. 65-4908 tolled the running of the statute of limitations as to the two corporate defendants named in the screening panel proceedings and that the initial petition against the corporate defendants was timely filed. At the hearing held on October 2, 1990, the trial court sustained the corporate defendants' motions for summary judgment as set forth earlier in the opinion and also sustained Martindale's oral motion to amend the petition to include Dr. Tenny as an individual. In allowing the amendment the trial court relied upon K.S.A. 60-215(c), which reads:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he would not be prejudiced in maintaining his defense on the merits, *and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.*" (Emphasis added.)

At the time of the court's ruling, the following occurred:

"THE COURT: I'm also going to find that the present state of the pleadings in this case do not include, as a party, Robert T. Tenny, M.D., personally.

. . . .

"Why don't I, at this time, sustain Mr. Walker's motion to amend the pleadings by adding Robert T. Tenny, M.D.

"I'm sustaining that motion under the authority of *Anderson versus United Cab* at 8 Kan. [App. 2d 694, 666 P.2d 735 (1983)], and *Ingram versus Kumar*, 585 [F.2d 566 (2d Cir. 1978)]. And I'm particularly relying upon the language in those cases which say that the statement contained in K.S.A. 60-215(c), to the effect that the statement in that statute about the statute of limitations doesn't mean what it says. I don't know how else to say it. I mean that's what they said in the case, and that is the law that I am bound to follow I think at this point, and I'm going to apply that law.

"Also, in sustaining the motion, I am taking notice, Mr. Walker, of those facts which involve Dr. Tenny being served and the fact that he did have notice of this lawsuit and the nature of this claim, because it hadn't been processed through a medical malpractice claims panel; and also note in his answer, in a portion of his answer, it included a statement to the extent that there was a claim made against Dr. Tenny, that they were saying it was barred by the statute of limitations. I mean, clearly, Dr. Tenny was

aware that this claim involved his personal conduct, and so there is absolutely no question about knowledge on the case.

"MR. WALKER: It's not your ruling at this point anyway, Your Honor, that I need to file a separate motion in this case, but rather we will proceed against Dr. Tenny individually?

"THE COURT: Yes, I'm going to require that you file an amended petition."

Martindale's amended petition against Dr. Tenny, individually, was filed a few days later.

In addition to the two cases relied upon by the trial court in finding that the amendment related back to the filing of the initial petition, Martindale also cites *Russell v. American Rock Crusher Co.*, 181 Kan. 891, 317 P.2d 847 (1957), and *White v. VinZant*, 13 Kan. App. 2d 467, 773 P.2d 1169 (1989), in support of her argument that the amended petition was proper.

The thrust of the principal arguments here, the trial court's decision, and the cases relied upon all ignore the requirement of K.S.A. 60-215(c)(2) that Dr. Tenny "knew or should have known that, *but for a mistake concerning the identity of the proper party*, the action would have been brought against him" and focus instead upon the statutory requirement of notice within the proper period for the commencing of the action.

We agree with Martindale that Dr. Tenny did receive actual notice in 1983 of the filing of the request for a malpractice screening panel and also received notice in 1988 of the filing of the petition against the corporate defendants. We also agree that in both documents there are allegations of negligence based upon the acts of Dr. Tenny in his treatment of Martindale. However, Dr. Tenny is not named as a party, individually, and no claim is asserted against him, individually, in the screening panel proceeding. While the actual petition filed in 1988 refers in some instances to Dr. Tenny as a defendant, he is not properly named or joined as a defendant and it appears no cause of action is alleged against him, individually. The district court specifically found that the petition did not include Dr. Tenny as a defendant. The issue overlooked by the trial court is whether K.S.A. 60-215(c) applies when the plaintiff in an action consciously omits a party, for whatever reason, from the action and then at some later date after the time limits of all possible statutes of limitations

have passed, attempts to bring that party into the action as a named defendant for the first time.

In *White v. VinZant*, 13 Kan. App. 2d 467, the doctor and St. Joseph Medical Center, Inc., were defendants in a medical malpractice action. They appealed from the district court's denial of their motions to dismiss, or alternatively, for summary judgment. The relevant facts of that case are brief. On January 12, 1987, White filed a request to appoint a medical malpractice screening panel. On January 21, 1987, the district court ordered that a screening panel be convened. On February 1, 1988, White filed his petition, alleging medical malpractice. Subsequently, defendants filed separate motions to dismiss and, alternatively, for summary judgment, contending, in part, that the action was barred by the applicable statute of limitations. The district court overruled both motions, finding that the statute of limitations was tolled by the filing of White's request for a screening panel and remained tolled until White filed his petition on February 1, 1988. On appeal, the Court of Appeals held that the statute of limitations was tolled by K.S.A. 65-4908 and that the screening panel is not prohibited from taking more than 90 days to issue its recommendation. The decision has no bearing upon whether K.S.A. 60-215(c)(2) precludes the claim of Martindale here.

The other cases relied upon by Martindale are more nearly in point but do not address the specific issue before us. In *Anderson v. United Cab Co.*, 8 Kan. App. 2d 694, the issue before the court involved the phrase "period provided by law for commencing the action" as used in K.S.A. 60-215(c). In that case the plaintiffs were in a vehicle that collided with a vehicle owned by the defendant on or about November 24, 1976. An action for damages was filed on November 24, 1978, and the defendant was erroneously named as "United Cab Co., a Kansas corporation" rather than by its proper corporate name "United Cab Co., Inc." The original petition was timely filed, and an agreed order allowing amendment to show the proper defendant was approved by the court on December 21, 1978. However, the trial court subsequently ruled that the statute of limitations had run. On appeal the Court of Appeals held that K.S.A. 60-215(c) applied and that the defendant received the requisite notice "within the

period provided by law for commencing the action." In doing so, the court stated:

"In the present case the defendant had actual knowledge of the lawsuit and that it was the correct defendant to the case three days after the statute of limitations expired. Additionally, service was made on the proper individual for receipt of summons, the resident agent. Furthermore, the error in the name was a slight one since defendant's status as a corporation was identified although the corporate designation 'Inc.' was not used." 8 Kan. App. 2d at 697-98.

In *United Cab Co.*, the misnaming of the proper defendant was not only inconsequential, but obviously was "a mistake concerning the identity of the proper party" when the plaintiff had made a good faith attempt to properly name the proper party. The same was true in *Russell v. American Rock Crusher Co.*, 181 Kan. 891, where the proper defendant was named in the petition as J.A. Tobin rather than J.E. Tobin.

*Ingram v. Kumar*, 585 F.2d 566, relied upon by the trial court and Martindale, was a medical malpractice action commenced in the federal district court in New York. Plaintiff's decedent allegedly received negligent medical treatment in Illinois from Dr. Vijay S. Kumar, a neurosurgeon. It was alleged that the negligent treatment resulted in the death of the deceased. Subsequent to the treatment and prior to the filing of suit, Dr. Kumar moved to the State of New York. When plaintiff filed her action in New York, she consulted the New York State Medical Directory and finding the name of Vijaya N. Kumar, believed that to be the proper spelling of the name of the doctor she intended to sue. Subsequently, after the statute of limitations had run, it was determined that the wrong doctor had been sued, that the correct name was Vijay S. Kumar and that he practiced in another part of New York State. The correct Dr. Kumar had no notice of the action until he was actually served long after the statute of limitations had run. Thereafter an amended complaint was filed and the court ultimately held that it related back under Fed. R. Civ. Proc. 15(c), which is identical to our K.S.A. 60-215(c). The court, in a rather tortured decision, was obviously trying to reach an equitable solution for the plaintiff under the facts of the similarity of the two doctors' highly unusual names and the good faith attempt of the plaintiff to name the correct defendant from the

beginning. Again, this case turned upon that portion of the rule relating to whether the newly named defendant received notice "within the period provided by law for commencing the action" against him. It did not hinge upon subsection (c)(2) of the rule and statute.

*Marr v. Gieger Ready-Mix Co.*, 209 Kan. 40, 495 P.2d 1399 (1972), is another case in which there was an error in the actual naming of the intended defendant. On May 25, 1967, a truck owned and operated by the Geiger Ready-Mix Company struck plaintiff's car, injuring plaintiff. Plaintiff timely filed a negligence action, and sued as defendant the Geiger Ready-Mix Company. Summons was served upon the office manager of the Geiger Ready-Mix Company. Evidence disclosed that the manager turned the summons over to E. W. Geiger, Jr., owner of the company. The Geiger Ready-Mix Company answered, and among the defenses asserted was a motion to dismiss the plaintiff's petition, alleging the court had no jurisdiction "because no summons was properly issued and served herein according to law." 209 Kan. at 42. On June 9, 1969, approximately two weeks after the two-year statute of limitations had run, the defendant had the motion to dismiss set for hearing and asserted for the first time in an affidavit that the Geiger Ready-Mix Company was a sole proprietorship owned and operated by E. W. Geiger, Jr. On the same day, plaintiff moved the court for an order permitting her to amend her original petition by substituting the name of E. W. Geiger, Jr., d/b/a Geiger Ready-Mix Concrete Company, for the Geiger Ready-Mix Company, under the provisions of K.S.A. 60-215(a) and (c). The trial court sustained the plaintiff's motion, permitting her to amend her original petition by changing the name of the defendant as requested. Defendant appealed. In affirming the trial court, the Kansas Supreme Court held that the prerequisite conditions set forth in K.S.A. 60-215(c) had been met and that the trial court did not err in permitting the plaintiff to amend her original petition by changing the name of the defendant.

In *Marr* this court went to great lengths to review the history of Fed. R. Civ. Proc. 15(c) and K.S.A. 60-215(c), and having done so stated:

"It may therefore be said an amendment changing the party against whom a claim is asserted relates back, if the amendment satisfies the general requirement of 60-215(c) that 'the claim or defense asserted in the amended pleading arose out of the conduct, . . . set forth in the original pleading,' and if within the applicable period of limitations, the party brought in by amendment (1) has received such notice of the institution of the action—the notice need not be formal—that he would not be prejudiced in defending the action on the merits, and *(2) knew or should have known that the action would have been brought against him initially had there not been a mistake concerning the identity of the proper party.*

"To permit the amendment under 60-215(c), as amended, in addition to the general requirement, the new party, within the period of limitations must receive such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, *and further that the new party knew or should have known that, but for a mistake concerning the identity of the proper party, he would have been brought into the proceedings earlier.* (See 3 Moore's Federal Practice [2d Ed.] § 15.15 [4.-2].)

"It should be emphasized that at no point has the question of proper service of summons been called into play. This is because informal notice is sufficient under Federal Rule No. 15(c), as amended, to bring into operation the relation back of the amendment. The rule is the same under 60-215(c), as amended, in the Kansas Code of Civil Procedure.

"Rule No. 215(c), as amended, refers to 'An amendment changing the party' and that is precisely what the plaintiff was granted leave to do by the trial court. The plaintiff amended her original petition by changing the name of the defendant from Geiger Ready-Mix Company to E.W. Geiger, Jr., d/b/a Geiger Ready-Mix Concrete Company. On the facts in this case the plaintiff sought to change the capacity in which the defendant was sued. There is no change in the parties before the court, all parties are on notice of the facts out of which the claim arose, and the doctrine of relation back does not result in prejudice to the defendant. E.W. Geiger, Jr., d/b/a/ Geiger Ready-Mix Company, received notice of the institution of the action within the period of limitations and, even though informal, such notice meets the requirement of due process. He further knew or should have known, *but for a mistake concerning the identity of a proper party,* he would have been brought into the proceedings earlier." 209 Kan. at 47-48. (Emphasis added.)

There was clearly an error on the part of the plaintiff as to the proper name of the intended defendant brought about by the defendant himself who chose to do business under a trade name which did not reveal whether the business was a sole proprietership, a partnership, a corporation, or some other form of busi-

ness entity and did not fully state the correct name of the business.

All of the foregoing cases involve situations where the plaintiff intended from the outset to sue the correct defendant but through some error did not actually have the exact name of the defendant. That is precisely the situation which K.S.A. 60-215(c) seeks to rectify, and when there is adequate notice and the other provisions of the statute are met, the courts should be liberal in allowing amendments to add additional defendants.

In the instant case there was never any doubt on behalf of the plaintiff as to the identity of Dr. Tenny and that it was his alleged negligence that caused plaintiff's damages. It is clear from the pleadings in both the screening panel proceeding and in this action that plaintiff was seeking to recover for the negligent acts of Dr. Tenny. However, knowing that her claims were based upon the alleged negligence of Dr. Ténny, the plaintiff proceeded in both instances to rely upon the vicarious liability of the two corporate defendants. Not until long after the statute of limitations had run did plaintiff attempt to assert her claim or cause of action against Dr. Tenny individually. While Dr. Tenny is referred to as a defendant in the petition, he was not properly named in accordance with K.S.A. 60-210(a) and no summons was sought for him individually. The corporate defendants filed an answer to the original petition on September 6, 1988, and specifically stated Dr. Tenny had not been named as a defendant in the action. Yet plaintiff took no action to make Dr. Tenny a party until more than two years after those events. There was no "mistake concerning the identity of the proper party" as required under K.S.A. 60-215(c)(2). For whatever reason, the plaintiff apparently made a considered decision to seek recovery against the corporate defendants on the theory of their vicarious liability rather than to also proceed individually against Dr. Tenny. If it was her intent to name Dr. Tenny individually, she had every opportunity to do so. Under such circumstances, does K.S.A. 60-215(c) preserve to the plaintiff the right to change her mind and sue Dr. Tenny individually after the statute of limitations has expired? We think not.

While our research has revealed no cases directly in point on these unusual facts and the procedure followed here, many of

the cases comment that under (c)(2) of the federal rule or comparable state statute, there must have been a "mistake concerning the identity of the proper party." In our opinion, the statute, which is clearly an attempt to avoid the harsh application of the statute of limitations, applies where there has been a good faith attempt to properly name and join the intended defendant but that attempt has been thwarted through some honest mistake in the identity of the proper defendant. We do not believe the statute was ever intended to apply to a factual situation such as the one now before us in which the proper identity of Dr. Tenny was known at all times but no attempt was made to join him as a defendant until after the statute of limitations had run. If the statute was intended to allow such amendment, then there was no reason for subsection (c)(2) to be included. Here, there was never any mistake concerning the identity of the proper party, and we hold the trial court erred in not granting summary judgment to Dr. Tenny on the ground the statute of limitations had run and in ruling that the amended petition related back under K.S.A. 60-215(c). While the old rules of formal pleading have been greatly relaxed in the interests of justice, and our present rules of pleading are to be liberally construed toward that goal, there still remains upon every lawyer the duty to comply with the applicable rules and statutes. Here, plaintiff had every opportunity to proceed properly with an action against Dr. Tenny and failed to do so. She cannot now be heard to complain after the statute of limitations has run.

For cases supporting our interpretation and application of K.S.A. 60-215(c)(2), in a variety of factual situations, see *Keller v. Prince George's County,* 923 F.2d 30 (4th Cir. 1991); *Norton v. International Harvester Co.,* 627 F.2d 18 (7th Cir. 1980); *Russ v. Ratliff,* 578 F.2d 221 (8th Cir. 1978); *Gridley v. Cunningham,* 550 F.2d 551 (8th Cir. 1977); *Bazan v. Wilson,* 30 Fed. R. Serv. 2d (Callaghan) 1145 (S.D. Tex. 1980).

In view of the foregoing there is no need to address the other arguments and contentions of the parties.

In conclusion we hold that it was error to grant summary judgment to the corporate defendants, Robert T. Tenny, M.D., P.A., and Midwest Neurosurgery Associates, and the ruling

thereon is reversed and the case is remanded for further proceedings as to such defendants. We further hold that it was error not to sustain the motion of the defendant Dr. Tenny for summary judgment, and the decision of the trial court on that issue is reversed.