(859 P.2d 399)

No. 69,224

ANITA MARIE MCVAY a/k/a ANITA MARIE BOLEN, *Appellant*, v. JOSEPH E. RICH, M.D., *Defendant*, and MEMORIAL HOSPITAL CORPORATION OF TOPEKA, *Appellee*.

Opinion filed September 3, 1993.

*Brenda L. Head* and *Gary D. McCallister*, of Davis, Wright, Unrein, Hummer & McCallister, of Topeka, for appellant.

*Derenda J. Mitchell*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, for appellee.

Before RULON, P.J., PIERRON, J., and DAVID PRAGER, Chief Justice Retired, assigned.

PRAGER, C.J.: Anita Marie McVay, plaintiff/appellant, appeals the decision of the district court granting summary judgment to Memorial Hospital Corporation of Topeka (Memorial), defendant/appellee, on McVay's claim of negligence against Memorial.

The sole issue in the case is whether the trial court erred in ruling that Memorial was immune from liability as a matter of law based on K.S.A. 65-442(b).

For purposes of this appeal, the facts are undisputed and are as follows:

In April of 1990, McVay filed a lawsuit against Joseph E. Rich, M.D., and Memorial. Specifically, McVay alleged that on August

29, 1988, Dr. Rich negligently performed a hysterectomy and that as a result of his negligence, she was required to undergo additional surgeries.

McVay also claimed that Memorial, the hospital where the hysterectomy was performed, was negligent in not properly providing or performing a quality assurance program or taking corrective action to suspend or revoke Dr. Rich's staff privileges when Memorial knew or should have known Dr. Rich's staff privileges had been withdrawn at other area hospitals. As a result of Memorial's alleged negligence, McVay claimed she required additional surgery and will incur additional medical expenses in the future. She also claimed she suffered and will continue to suffer pain, mental anguish, embarrassment, and humiliation as a result of her medical condition, which was caused by Memorial's negligent care and treatment.

The record shows that Dr. Rich failed to renew his license to practice medicine and surgery within the time required by statute and therefore his license was cancelled as of August 1, 1987. The Kansas State Board of Healing Arts (BOHA) also found probable cause to believe Dr. Rich made false statements on his request for reinstatement and practiced medicine from August 1, 1987, to October 30, 1987, without a valid license. The BOHA issued a final order in February of 1988 reinstating Rich's license to practice medicine as of February 6, 1988.

Subsequently, in August of 1988, the BOHA filed another petition for revocation of Dr. Rich's license, finding probable cause that Rich had violated the Healing Arts Act, K.S.A. 65-2801 *et seq.* There is also evidence in the record to suggest that Dr. Rich's staff privileges had been revoked at St. Francis and Stormont-Vail hospitals in Topeka. Dr. Rich was licensed to practice medicine and surgery at the time he performed surgery on McVay.

In September of 1992, the trial court filed a memorandum decision, granting Memorial's motion for summary judgment. The court held because Dr. Rich was not an agent or employee of Memorial and because McVay did not claim Memorial was vicariously liable, Memorial was not liable to McVay based on K.S.A. 65-442(b). McVay subsequently settled with Dr. Rich, who was covered under the Health Care Stabilization Fund.

The present case turns on the interpretation of K.S.A. 65-442(b), which reads:

"There shall be no liability on the part of and no action for damages shall arise against any licensed medical care facility because of the rendering of or failure to render professional services within such medical care facility by a person licensed to practice medicine and surgery if such person is not an employee or agent of such medical care facility."

McVay argues that the statute only bars claims based on vicarious liability and her claim is for a breach of an independent duty owed to her by Memorial. In other words, her claim is not based on Memorial's vicarious liability for Dr. Rich's actions, but is based on a breach of Memorial's independent duty to assure that only competent physicians are granted staff privileges. This negligence theory is referred to as "corporate negligence."

Under the doctrine of corporate negligence, a hospital owes a duty to its patients to use reasonable care to insure that physicians granted privileges are competent, and it owes a duty to periodically monitor and review their competency. Thus, a hospital may be liable for negligently screening the competency of its medical staff when it knows or should know a staff physician is incompetent.

The action is not one in which the hospital is sought to be held vicariously liable for the negligence of a staff physician.

Counsel for McVay correctly points out that many jurisdictions have recognized liability under the theory of corporate negligence. The first case which recognized the doctrine is *Darling v. Charleston Hospital*, 33 Ill. 2d 326, 211 N.E.2d 253 (1965), *cert. denied* 383 U.S. 946 (1966). The *Darling* court ruled that a hospital, as a corporation, had a duty to its patients to exercise reasonable care in the selection and retention of its medical staff. The corporate negligence theory has not been recognized in Kansas court decisions.

Memorial counters that because Dr. Rich was neither an employee nor an agent of the hospital, K.S.A. 65-442(b) provides the hospital with complete immunity. Memorial also contends that, at common law, a hospital would not be liable for the acts of a physician who was not an agent or an employee but rather an independent contractor. Memorial also points out that K.S.A. 1992 Supp. 40-3403(h) abrogates a hospital's vicarious liability

when the hospital is a health care provider qualified for coverage under the Health Care Stabilization Fund, for injury or death arising out of the rendering of or failure to render professional services by any other health care provider who is also qualified under the Health Care Stabilization Fund.

The interpretation and application of K.S.A. 65-442(b) is a matter of first impression. " 'Interpretation of statutes is a question of law. The function of the court is to interpret the statutes, giving the statutes the effect intended by the legislature.' " *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992) (quoting *State ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, 719, 792 P.2d 971 [1990]). Because this issue turns on a question of law, this court's scope of review is unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

" 'It is a fundamental rule of statutory construction to which all other rules are subordinate that the intent of the legislature governs when that intent can be ascertained.' " *Martindale v. Tenny*, 250 Kan. 621, 626, 829 P.2d 561 (1992) (quoting *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 [1984]).

The Kansas Legislature has enacted a plethora of statutes in recent years to try and stem the perceived tide of ever-increasing medical malpractice insurance premiums. See generally *Martindale v. Tenny*, 250 Kan. at 631 (noting that 40-3403[h] and the Medical Malpractice Screening Panel Act, K.S.A. 65-4901 *et seq.*, were enacted as part of an attempt to alleviate the perceived medical malpractice crisis first addressed in 1976 by the Health Care Provider Insurance Availability Act, K.S.A. 40-3401 *et seq.*) See also Dunn, *Medical Malpractice 1976: An Update on Change*, 45 J.K.B.A. 173 (1976) (discussing the various bills enacted along with H.B. 3155, which modified K.S.A. 65-442 to add subsection [b]).

K.S.A. 65-4914 reads in relevant part:

"It is the declared public policy of the state of Kansas that the provision of health care is essential to the well-being of its citizens as is the achievement of an acceptable quality of health care. Such goals may be achieved by requiring a system which combines a reasonable means to monitor the quality of health care with the provision of a reasonable means to compensate

patients for the risks related to receiving health care rendered by health care providers licensed by the state of Kansas."

K.S.A. 65-4922 requires each medical care facility to establish and maintain an internal risk management program. However, K.S.A. 65-4922(e) reads: "A medical care facility shall not be liable for compliance with or failure to comply with the provisions of this section or any rules and regulations adopted hereunder, except as provided in K.S.A. 65-430 and amendments thereto." (K.S.A. 65-430 deals with the circumstances under which a license may be denied, suspended, or revoked.)

K.S.A. 65-442(a) reads:

"There shall be no liability on the part of, and no action for damages shall arise against, any duly appointed member of the governing board or the duly appointed member of a committee of the medical staff of a licensed medical care facility for any act, statement or proceeding undertaken or performed within the scope of the functions and within the course of the performance of the duties of such committee of the medical staff if such member acted in good faith and without malice, and the medical staff operates pursuant to written bylaws that have been approved by the governing board of the medical care facility."

K.S.A. 65-4929 reads in relevant part:

"(a) The legislature of the state of Kansas recognizes the importance and necessity of providing and regulating certain aspects of health care delivery in order to protect the public's general health, safety and welfare. Implementation of risk management plans and reporting systems as required by K.S.A. 65-4922, 65-4923 and 65-4924 and peer review pursuant to K.S.A. 65-4915 and amendments thereto effectuate this policy.

"(b) Health care providers and review, executive or impaired provider committees performing their duties under K.S.A. 65-4922, 65-4923 and 65-4924 and peer review pursuant to K.S.A. 65-4915 . . . for the purposes expressed in subsection (a) . . . shall be considered to be state officers engaged in a discretionary function and all immunity of the state shall be extended to such health care providers and committees, including that from the federal and state antitrust laws."

K.S.A. 1992 Supp. 40-3403 establishes the Health Care Stabilization Fund. K.S.A. 1992 Supp. 40-3403(h) reads in relevant part:

"A health care provider who is qualified for coverage under the fund shall have no vicarious liability or responsibility for any injury or death arising out of the rendering of or the failure to render professional services inside

or outside this state by any other health care provider who is also qualified for coverage under the fund."

The language of these statutes shows the legislature's unmistakable intent to limit the liability of health care providers and medical care facilities. The term "Medical care facility" is defined by K.S.A. 65-425(h) as a hospital, ambulatory surgical center, or recuperation center. "Health care provider" is defined by K.S.A. 1992 Supp. 40-3401(f) to include a medical care facility licensed by the Department of Health and Environment.

The plain language of K.S.A. 65-442(b) indicates that the legislature meant to immunize licensed medical care facilities from liability arising out of the rendering of or failure to render professional services by persons licensed to practice medicine but not employed by the medical facility.

As stated above, McVay contends the language in K.S.A. 65-442(b) only eliminates Memorial's vicarious liability for the negligence of its non-employee doctors. This argument is somewhat confusing because vicarious liability is defined as

"[t]he imposition of liability on one person for the actionable conduct of another, based solely on a relationship between the two persons. Indirect or imputed legal responsibility for acts of another; for example, the liability of an employer for the acts of an employee, or, a principal for torts and contracts of an agent." Black's Law Dictionary 1566 (6th ed. 1990).

"Vicarious liability is a term generally applied to legal liability which arises solely because of a relationship and not because of any actual act of negligence by the person held vicariously liable for the act of another. . . . Vicarious liability depends upon the relationship of the parties, such as employer and employee or principal and agent." Leiker v. Gafford, 245 Kan. 325, 355, 778 P.2d 823 (1989).

Therefore, a hospital could not be vicariously liable for the rendering of or failure to render professional services by a licensee who was not an agent or employee. McVay's argument suggests that K.S.A. 65-442(b) eliminates a hospital's liability in a situation where no liability would exist. If Memorial would not be vicariously liable for Dr. Rich's acts without the statute, what was the intent of the legislature in enacting K.S.A. 65-442(b)?

There is a presumption that the legislature does not intend to enact useless or meaningless legislation. Todd v. Kelly, 251 Kan. at 515. The provisions of conflicting or overlapping statutes within several acts are to be read together. Although statutes may not

be strictly in pari materia, as that term is sometimes narrowly construed, statutes relating to the same subject matter or having the same general purpose must still be read together in an attempt to reconcile their differences and reach sensible and rational results. *Martindale*, 250 Kan. at 632.

In *Bair v. Peck*, 248 Kan. 824, 811 P.2d 1176 (1991), the Kansas Supreme Court upheld the constitutionality of the elimination of vicarious liability as it applied to medical malpractice claims against employer health care providers if the tortfeasor health care provider was qualified for coverage under the Health Care Stabilization Fund. In other words, a professional association of doctors would not be vicariously liable for the negligence of one or more of its doctors if they were qualified for coverage under the fund. The court noted that one of the purposes of 40-3403(h) was to eliminate the need for licensees to carry medical malpractice insurance as individuals and also to pay the cost for malpractice insurance for the associations to which they belonged. 248 Kan. at 833 (quoting the Special Committee on Medical Malpractice; see Proposal No. 47-Medical Malpractice, Report on Kansas Legislative Interim Studies to the 1986 Legislature 817 [December 1985]). The court reasoned that if an insurer knows that claims under the employer health care provider's policy will be limited to the employer's acts of negligence, the insurer will be assuming less risk of loss and arguably the employer's malpractice insurance premium will be reduced or stabilized. The reasoning is equally valid as it pertains to hospitals and physicians with staff privileges. If a hospital's insurer knows the hospital will only be liable for the negligence of its employees and agents who are not qualified under the fund, malpractice insurance rates should be stabilized.

K.S.A. 1992 Supp. 40-3403(h) applies to all health care providers. Further, the statute eliminates not only vicarious liability but also *responsibility* for any injury arising out of the rendering of or failure to render professional services by another health care provider who is also covered by the fund. See Southwick, *Hospital Liability, Two Theories Have Been Merged*, 4 The Journal of Legal Medicine 1, 29-44, 46-50 (1983) (article discusses the origin and expansion of corporate negligence doctrine and opines that

the distinction between a hospital's direct responsibility and its vicarious responsibility is blurred to the point of nonexistence).

In the instant case, it is undisputed that Memorial is a licensed health care facility and at the time of the surgery was covered by the Health Care Stabilization Fund. It is also undisputed that at the time of the alleged malpractice, Dr. Rich was licensed to practice medicine in Kansas and was qualified under the fund. The record also shows Dr. Rich was not an employee or agent of Memorial. Therefore, the record indicates all the criteria established by K.S.A. 1992 Supp. 40-3403(h) have been met.

Similarly, K.S.A. 65-442(b) eliminates all liability and provides that no action for damages may be brought against a licensed medical care facility if that action arises out of the rendering of or failure to render professional services by a licensee who is not an employee or agent of the facility. In other words, a hospital cannot be held liable for the malpractice of a physician who is an independent contractor, pursuant to K.S.A. 65-442(b), nor can the hospital be vicariously liable or otherwise responsible for the malpractice of a licensee pursuant to K.S.A. 1992 Supp. 40-3403(h).

To adopt McVay's rationale that the hospital can still be liable under the doctrine of "corporate negligence" would make it possible to circumvent the provisions of K.S.A. 65-442(b) and K.S.A. 1992 Supp. 40-3403(h). Taking McVay's reasoning to its logical conclusion, a hospital, which could not be sued based on vicarious liability for the malpractice of an employee physician who is covered by the fund, could be sued under the theory of corporate negligence for failing to establish or follow a system to insure physician employees are competent to practice medicine. This would also allow the plaintiff to circumvent K.S.A. 65-4922(e), which establishes that a health care provider is not liable for failing to establish and maintain an internal risk management program.

Although the general rule is that "statutes in derogation of common-law rights should be strictly construed . . . that is not a license for this court to ignore the plain and unambiguous wording of the statute." *Nova Stylings, Inc. v. Red Roof Inns, Inc.*, 242 Kan. 318, 321, 747 P.2d 107 (1987). Both K.S.A. 65-442(b) and K.S.A. 1992 Supp. 40-3403(h), when read in light of

the other statutes recited above, effectively foreclose to a plaintiff the use of the corporate negligence theory in Kansas.

"Quality health care and the litigant's right to recover compensation are still protected because the negligent health care provider is still fully responsible for the judgment while the employer health care provider remains subject to liability if the tortfeasor is not insured under the Act or if the employer is guilty of independent acts of negligence." *Bair v. Peck*, 248 Kan. at 832.

However, pursuant to the above statutes, the failure to ensure that all staff physicians are competent is not an independent act of negligence for which a health care provider can be sued.

The judgment of the district court is affirmed.