William Jeter Ellis County Counselor Emprise Bank Building P.O. Box 128 Hays, Kansas 67601
Dear Mr. Jeter:
As Ellis county counselor, you have requested our opinion on the following questions concerning repurchase agreements:
1. "If Ellis County follows the requirements of K.S.A. 12-1675(e)(1) and K.S.A. 12-1675(e)(2), will it be entitled, for financial reporting purposes, to the Governmental Accounting Standards Board Risk Category 1 for its repurchase agreement investments?"
2. "The Kansas Bankers Association has recommended to its member banks that they do hold-in-custody repurchase agreements with municipalities, rather than using purchase v. delivery. Will we be in compliance with K.S.A. 12-1675(e)(1) and K.S.A. 12-1675(e)(2) if we invest in KBA's recommended hold-in-custody repurchase agreements?"
3. "Is there anything we can do, short of uncontested ownership and control of the securities during the period of the repurchase agreement, to ensure compliance with K.S.A. 12-1675(e)(1) and K.S.A. 12-1675(e)(2)?"
The ability of a municipality to invest its idle funds through repurchase agreements is governed by K.S.A. 1993 Supp. 12-1675, which provides in relevant part as follows:
 "(a) The governing body of any county, city, township . . . may invest any moneys which are not immediately required for the purposes for which the moneys were collected or received, and the investment of which is not subject to or regulated by any other statute.
"(b) Such moneys shall be invested only:
. . . .
"(4) in repurchase agreements. . . ."
A repurchase agreement is the sale of securities on a temporary basis, involving the seller's agreement to repurchase the securities at a later date. The buyer has the corresponding obligation to sell the security back. Municipalities use these financial instruments to invest their excess funds. The repurchase agreement allows the municipality to buy the securities with the excess funds and sell them back at a designated higher price. The higher price represents the interest or return on the investment. Guide to Implementation of GASB Statement 3 on Deposits withFinancial Institutions, Investments (including Repurchase Agreements),and Reverse Repurchase Agreements, Governmental Accounting Standards Board (1991).
As you mention in your letter, a repurchase agreement may involve three separate parties. The buyer (municipality), the seller (financial institution), and a custodian for the securities. The identity of the security holder and the way in which the repurchase agreement is arranged determines the risk involved in the investment. The governmental accounting standards board ("GASB") Codification of GovernmentalAccounting and Financial Reporting as of June 30, 1993 divides investments into three categories, from lowest to highest risk:
 Risk Category 1 — Securities held by the buyer or its agent in the buyer's name.
 Risk Category 2 — Securities held by the seller's trust department or agent in the buyer's name.
 Risk Category 3 — Securities held by the seller or its trust department or agent, but not in the name of the buyer.
The Kansas legislature was concerned about the risk involved in investment of municipality funds of the state of Kansas. Other states have had problems with municipalities investing idle funds in arrangements that contained too much risk, thereby losing these funds.See, Minutes, committee on Financial Institutions and Insurance, February 4, 1992, attachment 2-49. This concern was resolved by adding a provision to K.S.A. 12-1675 which states:
 "(e)(1) All security purchases shall occur on a delivery versus payment basis.
 "(2) All securities shall be perfected in the name of the investing governmental unit and shall be delivered to the purchaser or a third party custodian which may be the state treasurer." L. 1992, ch. 146, sec. 3.
K.S.A. 1993 Supp. 12-1675(e)(1) will ensure the security is delivered to the purchaser (municipality), while 12-1675(e)(2) prescribes the security must be held in the purchaser's name. Therefore, if the municipality follows the K.S.A. 12-1675(e) requirements, then it will be entitled to GASB risk category 1 for its repurchase agreement investments.
Your second question involves whether a municipality can perform a hold-in-custody (HIC) repurchase agreement. HIC are repurchase agreements where the bank (seller) retains custody of the securities or the securities are maintained through an account at a correspondent bank. HIC repurchase agreements are authorized by the federal government through the passage of the governmental securities act (GSA) and the department of the treasury's drafting of regulations which detailed and implemented the GSA. See, 17 C.F.R. § 403.2, 450.2.
Such agreements are not, however, allowed under K.S.A. 1993 Supp.12-1675(e). The intent of legislature was to reduce the risk of the repurchase agreements. HIC repurchase agreements are not held by the purchasers and are therefore at least a GASB risk category 2. K.S.A. 1993 Supp. 12-1675(e)(1) expressly states that the security purchase must be made on a "delivery versus payment basis". Statutory rules of construction require the following:
 "Words and phrases shall be construed according to the context and the approved usage of the language, but technical words and phases, and other words and phrases that have acquired a peculiar and appropriate meaning in law, shall be construed according to their peculiar and appropriate meanings." K.S.A. 1993 Supp. 77-201 Second.
The phrase "delivery versus payment" is an industry phrase that connotes the delivery of legal ownership of a security before payment is due. See, S.E.C. v. Hansen, 726 F. Supp. 74, 75 (S.D.N.Y. 1989);Edwards Hanly v. Wells Fargo Sec. Clearance, 458 F. Supp. 1110
(1978). Therefore, it is impossible for the security to be delivered to the buyer and still be in possession of the seller.
K.S.A. 1993 Supp. 12-1675(e)(2) also excludes the possibility of utilizing HIC repurchase agreements. K.S.A. 1993 Supp. 12-1675(e)(2) states the security "shall be delivered to the purchaser. . . ." There is no ambiguity involved within this language, therefore, we "must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." Randall v. Seemann,228 Kan. 395, 397 (1980); see also, Martindale v. Tenny, 250 Kan. 621
(1992). For these reasons, we find K.S.A. 1993 Supp. 12-1675(e)(1) and (2) as requiring the actual delivery of the security to the municipality in order to execute a repurchase agreement, therefore negating any possiblity of HIC repurchase agreements.
Finally you inquire about alternatives to absolute ownership and control of securities in compliance with K.S.A. 1992 Supp. 12-1675(e). Once again, taking into consideration the intent behind this amendment, as well as the plain meaning of the statutory language, we must interpret this statute as requiring the greatest safety toward the investment of idle funds. Therefore, the securities must be delivered to the municipality purchaser or an independent third-party custodian which may be the state treasurer, and the governmental entity must have uncontested ownership and control of the securities to ensure compliance with K.S.A. 1993 Supp. 12-1675.
In conclusion, K.S.A. 1993 Supp. 12-1675(e) requires that the securities underlying a repurchase agreement involving a municipality, must be delivered to the municipality and be perfected in the name of the municipality. This in turn results in a GASB risk rating of category 1 for financial reporting purposes. Hold-in-custody repurchase agreements or any other variety that does not include the delivery of the security to the municipality are held to be invalid under K.S.A. 1993 Supp. 12-1675.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Nobuko K. Folmsbee Assistant Attorney General
RTS:JLM:NKF:bas