Tracy T. Diel, Executive Director Kansas State Gaming Agency 701 S.W. Jackson Street, Suite 200 Topeka, Kansas 66603-3729
Dear Mr. Diel:
You request our opinion concerning application of K.S.A. 1999 Supp.74-9809(a), which prohibits an employee or former employee of the State Gaming Agency from having a direct or indirect financial interest in any tribal gaming facility or host facility operated in the State of Kansas.
You provide the following fact scenario: In accordance with the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 (1988) et seq., Company A is a management company for one of the tribes that operates a gaming facility pursuant to a tribal-state compact. Company A presently manages a casino located in Kansas and has numerous gaming facilities throughout the United States. Employee X, a former employee of the State Gaming Agency, was contacted by Company A offering Employee X a job with Company B, located in another state. Employee X, if he were to accept the position with Company B, would leave Kansas to go to work for Company B. At the present time, Company B has no contact with any of the gaming facilities in this State. However, Company A is in the process of buying Company B whereby Company B would maintain its name, but would be a subsidiary of Company A.
The prohibition in K.S.A. 1999 Supp. 74-9809(a) states:
 "It is a class A nonperson misdemeanor for any person to have a financial interest, directly or indirectly, in any tribal gaming facility or any host facility that conducts or operates a game which can be played at a tribal gaming facility in this state and in which a progressive jackpot can be awarded while such person is executive director or an employee of the state gaming agency or during the five years immediately following termination of such person's employment as executive director or an employee of the state gaming agency."
The statute prohibits any direct or indirect financial interest in any tribal gaming facility or any host facility during employment at the State Gaming Agency,[1] and the criminal prohibition continues for five years immediately following termination of employment. The prohibition applies to the Executive Director and to any employee with the State Gaming Agency.
Your first question is whether Company B's connection as a subsidiary of Company A subjects Employee X to the prohibition in K.S.A. 74-9809(a) and thus prohibits Employee X from working for Company B for the five years following his termination of employment with the State Gaming Agency. In the fact scenario provided, Employee X is being recruited to work for Company B in another state, but Company B is about to become a subsidiary of Company A. A subsidiary is defined as: "[U]nder another's control. Term is often short for `subsidiary corporation'; i.e. one that is run and owned by another company which is called the `parent.'"[2]
The parent company generally owns at least a majority of the shares of the capital stock in the subsidiary company.[3] Employment by its nature includes an implied duty to act solely for the benefit of the employer in all aspects of the employee's work by avoiding conflicts of interest between the duty to the employer and any self-interest.[4]
The language of the statute is clear. When a statute is clear on its face, the Court reviewing the statute must give effect to the intention of the Legislature as expressed, rather than determine what the law should or should not be.[5] The Legislature clearly intended to prevent any direct or indirect financial interest in any tribal gaming facility doing business in Kansas, and for the criminal prohibition to run for five years after the termination of employment, in order to prevent the Director and employees that regulate gaming facilities from being influenced in their regulatory decisions.[6] This legislative intent is evident in the statute's other penal prohibitions. An employee cannot: (1) place a wager or play a game of chance at a gaming facility; (2) participate as an owner, manager or consultant; or (3) accept any compensation, gift, loan, entertainment, favor or service from any person or entity licensed by the gaming agency.[7] Additionally, even a director or employee's relatives are prohibited from holding a license for a tribal gaming facility, or entering into any business dealing with an owner or operator of a gaming facility.[8]
We assume that when Company B becomes a subsidiary of Company A, Company B will come under the control of Company A. If this is indeed the case, because Company A is a management company operating a gaming facility in Kansas, it is our opinion that the connection as parent and subsidiary will prohibit Employee X from working for Company B now and for five years after his/her termination of employment with the State Gaming Agency.
Your second question is whether ownership of stock by Employee X in Company B is a direct or indirect financial interest in Company A and thus prohibited by the statute. Although a stockholder has no legal or equitable title to the corporeal property of the company or corporation in which he owns stock, stock represents an ownership interest.[9]
Thus, ownership of stock in Company B is a direct financial interest which is subject to the prohibition once Company B becomes a subsidiary of Company A.
Your third question is whether contact by Company A, which operates a gaming facility in this State, creates sufficient contact to invoke the prohibition. The statute does not prohibit contact, nor does it prohibit recruiting employees. The statute prohibits a financial interest and thus in our opinion is not invoked until such time as a current or former employee or director has a direct or indirect financial interest in a gaming facility doing business in Kansas. Thus the recruitment being conducted for company B by Company A does not invoke the prohibition.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Guen Easley Assistant Attorney General
CJS:JLM:GE:jm
[1] The State Gaming Agency is part of the Kansas Racing and Gaming Commission, K.S.A. 1999 Supp. 74-9803.
[2] Black's Law Dictionary 1280 (5th ed. 1979).
[3] 18 Am.Jur.2d Corporations § 35 (1985).
[4] 27 Am.Jur.2d Employment Relationship § 216 (1996).
[5] Martindale v. Robert T. Tenny, M.D., PA., 250 Kan. 621, 626
(1992).
[6] Minutes, Senate Committee on Federal and State Affairs, April 26, 1996.
[7] K.S.A. 1999 Supp. 74-9809(b).
[8] K.S.A. 1999 Supp. 74-9809(c).
[9] U.S. v. Evans, 375 F.2d 730, 731 (9th Cir., 1967).