NOT DESIGNATED FOR PUBLICATION

No. 120,234

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In re CEC ENTERTAINMENT, INC.,
STOCKHOLDER LITIGATION,
(Twin City Pipe Trades Pension Trust,
*Appellant*,

v.

GOLDMAN SACHS GROUP, INC.,
*Appellee*.)

MEMORANDUM OPINION

Appeal from Shawnee District Court; TERESA L. WATSON, judge. Opinion filed September 27, 2019. Affirmed.

*Andrew M. DeMarea*, of Kenner Nygaard DeMarea Kendall LLC, of Kansas City, Missouri, *David A. Knotts* and *Randall J. Baron*, pro hac vice, of Robbins Geller Rudman & Dowd LLP, of San Diego, California, and *Christopher J. Orrico* and *Jeroen van Kwawegen*, pro hac vice, of Berstein Litowitz Berger & Grossmann LLP, of New York, New York, for appellant.

*Kelly D. Stohs*, of Polsinelli PC, of Overland Park, *Russell S. Jones, Jr.*, of Polsinelli PC, of Kansas City, Missouri, and *John D. Donovan, Jr.*, pro hac vice, of Ropes & Gray LLP, of Boston, Massachuetts, for appellee.

Before ARNOLD-BURGER, C.J., BRUNS and WARNER, JJ.

PER CURIAM: This appeal follows the involuntary dismissal (by Shawnee County District Court) of a proposed class action. This action arises out of the acquisition of CEC Entertainment, Inc.—best known for its Chuck E. Cheese's dining and entertainment establishments—by Apollo Global Management, LLC for $1.3 billion. After reviewing

1

the record on appeal and considering the legal arguments raised, we conclude that the district court appropriately dismissed the Consolidated Class Action Petition filed by Twin City Pipe Trades Pension Trust against The Goldman Sachs Group, Inc. We also conclude that the district court did not abuse its discretion in denying the motion for leave to file the [Proposed] Verified Amended Consolidated Class Action Petition that attempted to substitute Goldman, Sachs & Co.—which is not a party to this appeal—after the statute of limitations had run. Thus, we affirm.

FACTUAL AND PROCEDURAL HISTORY

*The Acquisition*

In early 2013, the senior management of CEC Entertainment, Inc. (CEC Entertainment)—a publicly traded corporation—began exploring potential strategic alternatives for the corporation. CEC Entertainment is a Kansas corporation with headquarters located in Irving, Texas. CEC Entertainment develops, operates, and franchises Chuck E. Cheese's restaurants and entertainment centers throughout the United States and in 11 foreign countries.

At a meeting held on July 30, 2013, the Board of Directors of CEC Entertainment approved the engagement of Goldman, Sachs & Co. to serve as financial advisor to the corporation in connection with the exploration of strategic alternatives. On October 9, 2013, the Board of Directors of CEC Entertainment determined that moving forward with a formal process to explore the possibility of a sale of the corporation was in the best interests of its shareholders. Over the next several weeks, representatives of Goldman, Sachs & Co. contacted 18 potential bidders. Ultimately, only two of the potential bidders—Apollo Global Management, LLC (Apollo Global) and Ares Management, LLC (Ares)—submitted nonbinding bids.

As the process progressed, the Board of Directors of CEC Entertainment authorized Goldman, Sachs & Co. to inform both Apollo Global and Ares regarding the timing and procedure for submitting a final definitive offer. In early January 2014, Apollo Global submitted a proposal to acquire all the outstanding equity interests of CEC Entertainment for $52.50 per share. However, Ares advised Goldman, Sachs & Co. that it would not be submitting a final definitive offer. This left Apollo Global as the sole bidder.

The Board of Directors of CEC Entertainment rejected Apollo Global's offer. In response, Apollo Global increased its offer to $54 per share and advised representatives of Goldman, Sachs & Co. that this was its final offer. This offer represented a premium of approximately 25% over CEC Entertainment's stock price before rumors of a possible acquisition began to circulate. Over the next few days, the nonprice terms of a potential agreement were negotiated.

On January 15, 2014, the Board of Directors of CEC Entertainment held a telephone conference at which legal counsel presented a detailed summary of the Merger Agreement negotiated by the parties. In particular, the representatives of Goldman, Sachs & Co. orally presented its opinion that the $54 per share was fair to the corporation's stockholders from a financial perspective. Representatives of Goldman, Sachs & Co. also advised the CEC Entertainment Board members of its past relationship with Apollo Global, including serving as an advisor in the sale of CKE, Inc.—an affiliate of Apollo Global—to Roark Capital Group in December 2013.

On the evening of January 15, 2014, the Board of Directors of CEC Entertainment unanimously approved the transaction with Apollo Global, and the Merger Agreement was executed. The following morning, a joint press release was issued announcing the agreement of Apollo Global to purchase all of the outstanding shares of CEC Entertainment at $54 per share for a total price of $1.3 billion. Additionally, the press

3

release expressly stated that "Goldman, Sachs & Co. is serving as financial advisor to the Company . . . ."

Under the terms of the Merger Agreement, Apollo Global immediately commenced a tender offer for outstanding shares of CEC Entertainment. Although a "go-shop" provision in the Merger Agreement allowed CEC Entertainment to reengage with Ares or to consider unsolicited indications of interest, neither Ares nor any other bidder came forward. On January 22, 2014, CEC Entertainment filed a Schedule 14D-9 Recommendation Statement (Schedule 14D-9) with the United States Securities and Exchange Commission. The Schedule 14D-9 advised shareholders of the unanimous recommendation of the Board of Directors of CEC Entertainment to accept Apollo Global's cash offer of $54 per share. In addition to other disclosures, the Schedule 14D-9 stated that "Goldman Sachs & Co." served as CEC Entertainment's "financial advisor" during the transaction.

In addition, a January 15, 2014 letter opinion written by Goldman, Sachs & Co. to the Board of Directors of CEC Entertainment is attached to the Schedule 14D-9 and incorporated by reference. The letter not only offers an opinion regarding the fairness of the transaction to shareholders but also discloses that Goldman, Sachs & Co. has performed services on behalf of Apollo Global and its affiliates, including its involvement with the CKE transaction. A similar disclosure also appears in the Summary of Financial Analyses section of the Schedule 14D-9.

On February 14, 2014, the transaction between CEC Entertainment and Apollo Global closed. By that time, 68% of the outstanding shares of CEC Entertainment had been tendered. Once again, in the press release announcing the completion of the acquisition, it was expressly stated that "Goldman, Sachs & Co. is serving as financial advisor" to CEC Entertainment.

*Commencement of Litigation*

Within a matter of days following the announcement of the Merger Agreement, four plaintiffs—each of whom claimed to be a shareholder of CEC Entertainment—filed lawsuits in Shawnee County seeking to enjoin the transaction. See *Coyne v. CEC Entertainment, Inc., et al.*, No. 14-CV-57 (Kan. 3rd Jud. Dist. Ct. Jan. 21, 2014); *Solak v. CEC Entertainment, Inc., et al.*, No. 14-CV-55 (Kan. 3rd Jud. Dist. Ct. Jan. 22, 2014); *Dixon v. CEC Entertainment, Inc., et al.*, No. 14-CV-81 (Kan. 3rd Jud. Dist. Ct. Jan. 24, 2014); *Louisiana Municipal Police Employees' Retirement System v. Frank, et al.*, No. 14-CV-97 (Kan. 3rd Jud. Dist. Ct. Jan. 31, 2014). Notably, Twin City Pipe Pension Trust (Twin City Pipe) was not a plaintiff in any of the initial lawsuits. Likewise, neither The Goldman Sachs Group, Inc. nor Goldman, Sachs & Co. LLC were named as defendants the original petitions.

On March 7, 2014, the district court consolidated the four lawsuits into Shawnee County Case No. 14-C-57. Although the original plaintiffs had sought to enjoin the transaction, the request for injunctive relief was abandoned. Following the consolidation of the actions, the parties began the discovery process. On March 17, 2014, Goldman, Sachs & Co. was served with a nonparty records subpoena. In response, Goldman, Sachs & Co. produced numerous documents to the plaintiffs relating to the acquisition of CEC Entertainment by Apollo Global.

*Filing of Consolidated Class Action Petition*

On July 21, 2015, Twin City Pipe filed a Consolidated Class Action Petition. As indicated above, Twin City Pipe was not one of the plaintiffs in the initial actions filed in Shawnee County and it is unclear from the record how it became the plaintiff. However, the parties do not assert any issue relating to the substitution of Twin City Pipe as the Plaintiff in this appeal. Thus, we will assume that the district court properly joined Twin City Pipe as a party to this action.

5

In the Consolidated Class Action Petition, Twin City Pipe—and all other similarly situated public shareholders of CEC Entertainment—asserted claims not only against the members of the Board of Directors of CEC Entertainment but also added The Goldman Sachs Group, Inc. as a defendant. The Goldman Sachs Group, Inc.—which is a Delaware corporation—is the parent company to Goldman, Sachs & Co.—which is a New York limited liability company.

Specifically, Twin City Pipe asserted four claims for relief:

- Count I—Breach of Fiduciary Duty against the individual members of the Board of Directors of CEC Entertainment;
- Count II—Breach of Fiduciary Duty against the officers of CEC Entertainment;
- Count III—Aiding and Abetting the officers and board members of CEC Entertainment against The Goldman Sachs Group, Inc.; and
- Count IV—Failure to Disclose Material Information to the shareholders of CEC Entertainment against the officers and board members.

In the Consolidated Class Action Petition, Twin City Pipe sought certification of a shareholders' class and the appointment of Twin City Pipe as the class representative. In addition, Twin City Pipe sought damages in an unspecified amount for the alleged wrongdoing of the defendants. Finally, Twin City Pipe sought attorney fees and expenses as well as the court costs incurred as a result of bringing this action.

*Motions to Dismiss*

On October 22, 2015, the defendants moved to dismiss the Consolidated Class Action Petition pursuant to K.S.A. 60-212(b)(2) and (6). In its motion, The Goldman Sachs Group, Inc. asserted "lack of personal jurisdiction" as well as a "failure to state a claim for aiding and abetting liability because [the Consolidated Class Petition] fails to

6

plead sufficient facts showing underlying breaches of fiduciary duty." The Goldman Sachs Group, Inc. also asserted that Twin City Pipe had failed to plead sufficient facts to show that it "was aware of the alleged breaches, or that [it] knowingly and substantially assisted in such purported breaches." In its memorandum filed in support of the motion, The Goldman Sachs Group, Inc. explicitly stated that Twin City Pipe sued the wrong entity. Specifically, The Goldman Sachs Group, Inc. pointed out that Goldman, Sachs & Co. was the actual financial advisor as disclosed in the Schedule 14D-9 filed with the Security and Exchange Commission on January 22, 2014.

In its response, filed on November 12, 2015, Twin City Pipe continued to assert that The Goldman Sachs Group, Inc. was the proper defendant. It also suggested—in a conclusory fashion—that it was appropriate to sue the parent company rather than the subsidiary corporation that actually served as the financial advisor. Still, Twin City Pipe stated in its response that if the district court found the proper defendant had not been named, it would seek leave to file an amended petition. Nevertheless, Twin City Pipe took no action to seek leave to file an amended petition or to substitute Goldman, Sachs & Co. as a defendant until after the expiration of the statute of limitations.

*Appointment of Special Master*

On January 21, 2016, with the consent of the parties, the district court appointed a Special Master pursuant to K.S.A. 60-253. The district court charged the Special Master with overseeing "all proceedings in this case other than any trial on the merits and related pre-trial motions, pre-trial briefing, and the pre-trial conference." The district court also ordered that it would "enter an order consistent with the report of the Special Master unless a party objects to the report within thirty (30) calendar days . . . ." In the event of an objection, the district court would make a determination regarding whether to adopt, reject, or modify the recommendations made by the Special Master.

Although it is unclear from the record when Twin City Pipe first realized that it had sued the wrong party, it did not attempt to take any action to resolve the issue until March 23, 2016. At a hearing held before the Special Master on that date, Twin City Pipe orally requested that it be allowed to substitute Goldman, Sachs & Co. for The Goldman Sachs Group, Inc. Nevertheless, the parties do not dispute that, by the date of the hearing, the statute of limitations had already run as to the claims arising out of the acquisition of CEC Entertainment by Apollo Global. The Special Master did not rule on the request at that time, and it would be more than a year before Twin City Pipe finally filed a motion seeking leave to file an amended petition adding Goldman, Sachs & Co. as a defendant.

*The Reports of the Special Master*

On January 27, 2016, Twin City Pipe voluntarily dismissed its claims against CEC Entertainment with prejudice. Over a year later, on March 1, 2017, the Special Master issued his initial report. In his report, the Special Master concluded that the officers and members of the Board of Directors of CEC Entertainment did not breach any fiduciary duty. Accordingly, he recommended that the district court should dismiss the claims asserted against them. Likewise, the Special Master found that the Consolidated Class Action Petition "does not provide the basis for any inference of knowing wrongdoing on the part of [the financial advisor], and without scienter, the aiding and abetting claims should be dismissed." The Special Master also determined that the Board of Directors and the financial advisor are "entitled to the cleansing effect of stockholder approval."

Although the Special Master recommended that the district court should dismiss the entire action, he went on to briefly discuss the issue of personal jurisdiction. In doing so, he noted that Twin City Pipe had sued the wrong financial advisor. Specifically, the Special Master found that because The Goldman Sachs Group, Inc. "did not act as the financial advisor to CEC or perform any of the allegedly improper acts set forth in the [Consolidated Class Action] Petition, [it] must be dismissed because of the lack of personal jurisdiction, and the Plaintiff does not dispute that."

8

Next, the Special Master turned to the issue of whether Twin City Pipe should be allowed to substitute Goldman, Sachs & Co. as a defendant even though the statute of limitations had expired. The Special Master found that Twin City Pipe "knew as far back as 2014 that [Goldman, Sachs & Co.], and not [The Goldman Sachs Group, Inc.], provided financial advisory services to CEC for the transaction." The Special Master noted that Twin City Pipe's knowledge that Goldman, Sachs & Co. was the proper party was corroborated by the fact that Schedule 14D-9 unambiguously identified Goldman, Sachs & Co as the financial advisor. In addition, the Special Master noted that nonparty subpoenas had been issued to Goldman, Sachs & Co. in March and June of 2014. Furthermore, the Special Master found that Twin City Pipe "had the opportunity to proceed against [Goldman, Sachs & Co.] in a timely and otherwise proper fashion. For whatever reason, it did not do so."

Nevertheless, the Special Master recommended that the district court should allow substitution and that it "should relate back [to the filing of the Consolidated Class Action Petition] subject . . . to the question of personal jurisdiction over [Goldman, Sachs & Co.]." Without explanation, the Special Master concluded that "[t]his is not an instance where the Plaintiff made an intentional, tactical decision not to sue the proper party." Thereafter, both Twin City Pipe and The Goldman Sachs Group, Inc. filed timely objections to the Special Master's Report.

On March 31, 2017, Twin City finally filed a motion for leave to file a [Proposed] Verified Amended Consolidated Class Action Petition. The proposed amended petition attempted to assert a claim solely against Goldman, Sachs & Co.—which had not previously been a party to the lawsuit—for allegedly aiding and abetting the breach of fiduciary duties by the members of the Board of CEC Entertainment. These allegations are substantially similar to those asserted against The Goldman Sachs Group, Inc. in Count III of the Consolidated Class Action Petition. On June 1, 2017, Twin City Pipe

9

voluntarily dismissed with prejudice Counts I, II, and IV of the Consolidated Class Action Petition.

The parties then returned to the Special Master to address whether the district court should grant Twin City Pipe's motion for leave to file the [Proposed] Verified Amended Consolidated Class Action Petition. In November 2017, the Special Master issued a supplemental report. Notwithstanding his previous recommendation that substitution of Goldman, Sachs & Co. should be allowed, the Special Master found in his second report that an attempt to amend the petition would be futile. Thus, he recommended that the district court deny the motion for leave to amend and that this action be dismissed.

*District Court's Decision*

On September 9, 2018, after additional briefing and oral argument, the district court issued a Memorandum Decision and Order. In the decision, the district court adopted both of the Special Master's reports, granted the motion to dismiss filed by The Goldman Sachs Group, Inc., and denied Twin City Pipe's motion for leave to file the [Proposed] Verified Amended Consolidated Class Action Petition on the grounds of futility. In doing so, the district court determined that the allegations of "misstatements and omissions" asserted in the [Proposed] Verified Amended Consolidated Class Action Petition were not material as a matter of law.

The district court concluded that "[t]he shareholders were fully informed that Goldman bankers were involved in both the CEC-Apollo and CKE Roark transactions, and that Goldman and Apollo had a lengthy history." In particular, the district court noted that the Schedule 14D-9 specifically "listed seven transactions in the preceding two years in which Goldman and Apollo had been involved." The district court further found that "[t]he names of individual Goldman bankers in addition to this information was not material" and that Twin City Pipe "failed to allege any misstatements or omissions that

10

significantly alter the total mix of available information." In light of this ruling, the district court did not analyze the issues of substitution or personal jurisdiction.

ANALYSIS

*Class Actions and Use of Special Masters*

Class actions are a type of representative litigation and are guided by the procedures set forth in K.S.A. 2018 Supp. 60-223. A shareholder class action is usually brought against a corporation, officers, and directors by a representative acting on behalf of shareholders. Under K.S.A. 2018 Supp. 60-223(a), a class will only be certified if it is so numerous that joinder of all members is impracticable; there are common questions of law or fact; the claims of the representative party are typical of the claims of the class; and the representative party will fairly and adequately protect the interests of the class. Here, the district court dismissed the purported class action prior to the filing of a request for certification.

Due to the representative nature of class actions, district courts have a responsibility to oversee such cases in a meaningful manner. In fulfilling this oversight responsibility, district courts have the authority to issue appropriate orders to control the course of the proceedings and to protect the interest of the parties. K.S.A. 2018 Supp. 60-223(d); see *Ross-Williams v. Bennett*, 55 Kan. App. 2d 524, 545, 419 P.3d 608, *rev. denied* November 21, 2018. In this case, the district court appropriately exercised its authority—with the consent of the parties—to appoint a Special Master pursuant to K.S.A. 2018 Supp. 60-253.

In the order of appointment, the district court granted the Special Master broad power to "oversee all proceedings in this case other than any trial on the merits and related pre-trial motions, pretrial briefing, and the pre-trial conference." This included the authority to resolve discovery disputes as well as to issue a report and recommendation to

11

the district court on dispositive motions. See K.S.A. 2018 Supp. 60-253(c). Such a recommendation would be binding unless a party objected to the report within 30 days. Likewise, the district court noted in the order of appointment that "[t]he Special Master's findings of fact are reviewed for clear error" and "conclusions of law are reviewed de novo." See K.S.A. 2018 Supp. 60-253(e). Ultimately, the Special Master issued two reports in this case, and the district court adopted the findings set forth in both reports.

*Issues Presented*

In its notice of appeal, Twin City Pipe appeals from the Memorandum Decision and Order entered by the district court on September 9, 2018. The Goldman Sachs Group, Inc. also appeals from the same Memorandum Decision and Order—as stated in its notice of cross-appeal—but only to the extent that the district court found that Twin City Pipe's "proposed amended petition would be timely as to the proposed defendant Goldman, Sachs & Co." Although Twin City Pipe appeals from the district court's Memorandum Decision and Order in its entirety, a primary focus of both parties is on the issue of whether the district court erred in denying the motion for leave to file the [Proposed] Amended Consolidated Class Petition. We will briefly discuss the district court's ruling on the motion to dismiss before addressing its ruling on the motion for leave to amend.

*Dismissal of Consolidated Class Action Petition*

In its Memorandum Decision and Order, the district court granted The Goldman Sachs Group, Inc.'s Motion to Dismiss the Consolidated Class Action Petition. In its motion to dismiss, The Goldman Sachs Group, Inc. requested that the district court dismiss the Consolidated Class Action Petition pursuant to K.S.A. 60-212(b)(2) and (6). The Special Master agreed that the Consolidated Class Action Petition should be dismissed, and the district court adopted this recommendation.

12

Notwithstanding the all-encompassing language used in its Notice of Appeal, it does not appear that Twin City Pipe disputes the district court's ruling on this issue. As we will discuss further below, it is undisputed that the Schedule 14D-9 filed with the Securities and Exchange Commission on January 22, 2014, unambiguously disclosed that it was Goldman, Sachs & Co.—not The Goldman Sachs Group, Inc.—that had served as the financial advisor to CEC Entertainment during its transaction with Apollo Global. Moreover, a review of the record on appeal reveals that The Goldman Sachs Group, Inc. raised this issue when it filed its Motion to Dismiss the Consolidated Class Action Petition on October 22, 2015. Although Twin City Pipe balked at the suggestion that it had named the wrong party in its response to motion to dismiss, it now appears to recognize that it should have sued Goldman, Sachs & Co. instead of The Goldman Sachs Group, Inc.

In its appellate brief, Twin City Pipe simply chooses to ignore the part of the district court's order dismissing the Consolidated Class Action Petition. In fact, Twin City Pipe states in the first sentence of its brief that "[t]his is a stockholder class action against Goldman, Sachs & Co. . . ." Of course, this statement is incorrect because the district court denied the motion for leave to amend, and Goldman, Sachs & Co. is not a party to this appeal. Regardless, we conclude that district court properly granted the Motion to Dismiss the Consolidated Class Action Petition.

*Motion for Leave to Amend*

Twin City Pipe also contends that the district court erred in denying its motion for leave to amend to file its [Proposed] Amended Verified Consolidated Class Action Petition. In response, The Goldman Sachs Group, Inc. asserts that the district court correctly denied the motion for leave to amend on the grounds of futility for failure to state a claim of aiding and abetting the alleged breach of a fiduciary duty by the officers and directors of CEC Entertainment. Furthermore, in its cross-appeal, The Goldman Sachs Group, Inc. contends that the proposed amendment would also be futile because

13

the claim against the new party—Goldman, Sachs & Co.—would not relate back to the filing of the Consolidated Class Action Petition under K.S.A. 2018 Supp. 60-215(c)(2). It further argues that as a result, the proposed amendment would be barred by the statute of limitations under K.S.A. 60-513(a)(4).

K.S.A. 2018 Supp. 60-215(a)(2) provides that—with certain exceptions not applicable in this case—"a party may amend its pleading only with the opposing party's written consent, or the court's leave." While leave should be freely given when justice so requires, courts are given broad discretion to permit or deny the amendment of pleadings. *Johnson v. Board of Pratt County Comm'rs*, 259 Kan. 305, 327, 913 P.2d 119 (1996); see also *Hajda v. University of Kansas Hosp. Auth.*, 51 Kan. App. 2d 761, 774, 356 P.3d 1 (2015). Judicial discretion is abused if the action taken (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. See *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018).

Nevertheless, the issue of whether the district court properly denied the motion for leave to amend to file the [Proposed] Verified Amended Consolidated Class Action Petition requires us to interpret two statutes—K.S.A. 2018 Supp. 60-215(c)(2) and K.S.A. 60-513(a)(4). The interpretation of statutes also involves a question of law and our review is unlimited. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). Similarly, interpretation and application of a statute of limitations is a question of law over which an appellate court has unlimited review. *Law v. Law Company Building Assocs.*, 295 Kan. 551, 566, 289 P.3d 1066 (2012).

In *Johnson v. Board of Pratt County Comm'rs*, 259 Kan. 305, 327, 913 P.2d 119 (1996), the Kansas Supreme Court recognized at least five valid reasons for denying a motion to amend a pleading. These reasons include: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by virtue of

14

allowance of the amendment; and/or (5) futility of amendment. See *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Smith v. Philip Morris Companies, Inc.*, 50 Kan. App. 2d 535, 587, 335 P.3d 644 (2014) ("Our Supreme Court has recognized at least five valid justifications for denying a motion to amend a pleading despite our broad notice-pleading principles . . . ."). As indicated above, in denying the motion for leave to amend to file the [Proposed] Amended Verified Consolidated Class Action Petition, the district court adopted the Special Master's finding that the proposed amendment would be futile.

Based on our review of the record on appeal, we agree with the district court regarding the denial of the proposed amendment. However, we reach this conclusion on different grounds. Accord *Oxy USA, Inc. v. Red Wing Oil, LLC*, 309 Kan. 1022, 1028, 442 P.3d 504 (2019) (affirming district court judgment as "right for the wrong reason"). In particular, we find the argument presented by The Goldman Sachs Group, Inc. in its cross-appeal to be persuasive based on the procedural history in this case. Thus, we find dismissal was appropriate because the [Proposed] Amended Consolidated Class Action Petition—which was submitted for the district court's consideration more than three years after this litigation began and only alleges claims against Goldman, Sachs & Co.—was filed outside the statute of limitations and does not relate back to the filing of the initial Consolidated Class Action Petition.

It is undisputed that Twin City Pipe is seeking leave to file an amended petition that would change the named defendant after the expiration of the statute of limitations under K.S.A. 60-513(a)(4). Specifically, Twin City Pipe is seeking to replace The Goldman Sachs Group, Inc.—a Delaware corporation—with Goldman, Sachs & Co.—a New York limited liability company. It is also undisputed that the two are separate legal entities and that it was Goldman, Sachs & Co. that served as the financial advisor to CEC Entertainment during the transaction with Apollo Global.

15

The applicable statute of limitations for Twin City Pipe's stated cause of action is K.S.A. 60-513(a)(4), which limits the filing of such actions to two years. The parties agree that the statute of limitations for Twin City Pipe's aiding and abetting claim against Goldman, Sachs & Co. expired on February 14, 2016, which was two years after the transaction closed. Accordingly, on March 23, 2016—when Twin City Pipe made its oral request to the Special Master to substitute Goldman, Sachs & Co. for The Goldman Sachs Group, Inc.—the statute of limitations had already expired. In addition, although Twin City Pipe represented to the Special Master that it would formally seek leave to amend the Consolidated Class Action Petition, it waited until March 31, 2017—more than a year after informally requesting substitution—to file a formal Motion for Leave to Amend Verified Class Action Petition.

Unless the claim that Twin City Pipe now seeks to pursue against Goldman, Sachs & Co. relates back to the Consolidated Class Action Petition pursuant to K.S.A. 2018 Supp. 60-215(c), it would be barred by the statute of limitations. Unfortunately, the district court did not analyze this issue in its Memorandum Decision and Order. This is understandable in light of the fact that the district court had already found that granting leave to Twin City Pipe to file the [Proposed] Verified Amended Consolidated Class Action Petition would be futile on other grounds.

Although we do so for different reasons than the district court, we also conclude that amendment sought by Twin City Pipe against Goldman, Sachs & Co. would be an exercise in futility. Specifically, we find no evidence in the record reflecting a mistake as to the proper identity of the defendant. Accordingly, the proposed amendment does not relate back to the filing of the Consolidated Class Action Petition. Thus, the amendment would be barred by the statute of limitations.

In Kansas, the "relation back" doctrine is codified at K.S.A. 2018 Supp. 60-215(c), which provides:

"An amendment of a pleading relates back to the date of the original pleading when:

"(1) The law that provides the applicable statute of limitations allows relation back;

"(2) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out, or attempted to be set out, in the original pleading; or

"(3) the amendment changes the party or the naming of the party against whom a claim is asserted, if paragraph (2) is satisfied and if, within the period provided by law for commencing the action against the party, including the period for service of process under K.S.A. 60-203, and amendments thereto, *the party to be brought in by amendment*:

(A) Received such notice of the action that it will not be prejudiced in defending on the merits; and

(B) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." (Emphasis added.)

In *Martindale v. Tenny*, 250 Kan. 621, 643, 829 P.2d 561 (1992), the Kansas Supreme Court explained:

"[K.S.A. 60-215(c)], which is clearly an attempt to avoid the harsh application of the statute of limitations, applies where there has been a good faith attempt to properly name and join the intended defendant but that attempt has been thwarted through some honest mistake in the identity of the proper defendant."

In *Martindale*, our Supreme Court held that "[t]he provisions of K.S.A. 60-215(c) do not apply when a plaintiff knows the proper identity of a prospective defendant but makes no attempt to join that party as a defendant until after the statute of limitations has run." 250 Kan. 621, Syl. ¶ 9. In other words, the relation back doctrine is not intended to protect a plaintiff who "consciously omits a party, for whatever reason, from the action and then at some later date after the time limits of all possible statutes of limitations have passed, attempts to bring that party into the action as a named defendant for the first time." 250 Kan. at 637-38. Rather, the relation back doctrine applies where "the plaintiff

17

intended from the outset to sue the correct defendant but through some error did not actually have the exact name of the defendant." 250 Kan. at 642.

We find the Kansas Supreme Court's interpretation of K.S.A. 2018 Supp. 60-215(c)(2) in *Martindale* to be consistent with the plain language of the statute. Moreover, as an intermediate appellate court, we are duty bound to follow the precedent of the Kansas Supreme Court—as are district courts—absent an indication that it is departing from its previous position. *Majors v. Hillebrand*, 51 Kan. App. 2d 625, 629-30, 349 P.3d 1283 (2015). We have no indication that our Supreme Court is departing from its holding in *Martindale*.

We note that for more than 25 years, Kansas courts—both state and federal—have looked to the *Martindale* decision when addressing relation back issues under K.S.A. 2018 Supp. 60-215(c). See *Srivastava v. University of Kansas*, No. 118,329, 2018 WL 1770325, at *9-10 (Kan. App. 2018) (unpublished opinion) (plaintiff cannot use the "relation-back provision because the provision does not exist to give relief to plaintiffs who make errant strategic decisions"); *Hoover v. St. Francis Health Center*, No. 97,175, 2007 WL 2695840, at *4 (Kan. App. 2007) (K.S.A. 60-215[c] does not provide relief for a plaintiff who made a conscious decision not to sue a party); *Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1159 (D. Kan. 2000) (quoting *Martindale* in finding that there is no support for the suggestion "that Kansas courts would ignore the mistaken identity requirement in applying K.S.A. § 60-215[c]"); *Gardner By & Through Gardner v. Toyota Motor Sales, U.S.A., Inc.*, 793 F. Supp. 287, 289 (D. Kan. 1992) (citing *Martindale* in concluding that "[r]elation back to add an omitted party is appropriate only where the party seeking the amendment was prevented from bringing the action against the omitted party due to a mistake of identity").

In the present case, the record shows that Twin City Pipe either knew or should have known the proper identity of the defendant prior to filing the Consolidated Class

Action Petition. Yet, Twin City Pipe failed to sue the correct party, argued that it had sued the correct party, and failed to take timely action to seek leave to amend the Consolidated Class Action Petition.

A review of the litigation timeline reveals:

- January 16, 2014—Press Release announcing agreement between CEC Entertainment and Apollo Global. ("Goldman, Sachs & Co. is serving as financial advisor to the Company . . . .")
- January 22, 2014—Filing of Schedule 14D-9 Recommendation Statement with Securities and Exchange Commission. ("Goldman Sachs & Co." identified as "the Company's general financial advisor, regarding potential strategic alternatives for the Company to increase stockholder value.")
- January 22, 2014—Letter Opinion from "Goldman, Sachs & Co." to Board of Directors of CEC Entertainment dated January 15, 2014, is attached to the Schedule 14D-9 and incorporated by reference. ("This opinion has been approved by a fairness committee of Goldman, Sachs & Co.")
- January 29, 2014—Filing by plaintiffs of Notice of Intent to Serve Subpoena Duces Tecum on "Goldman Sachs & Co."
- February 13, 2014—Issuance of Subpoena by plaintiffs to "Goldman, Sachs & Co."
- February 14, 2014—Press Release announcing the completion of the acquisition. ("Goldman, Sachs & Co. is serving as financial advisor to the Company . . . .")
- February 27, 2014—Business Records Subpoena issued by plaintiffs to "Goldman Sachs & Co."
- March 6, 2014—Return of Service for Business Records Subpoena issued by plaintiffs to "Goldman Sachs & Co."

- July 21, 2015—Consolidated Class Action Petition filed by Twin City Pipe naming "The Goldman Sachs Group, Inc." as a defendant and identifying it as "a Delaware corporation."

- October 22, 2015—Motion to Dismiss the Consolidated Class Action Petition and Memorandum of Law in Support. ("As the plaintiff knows—and as all of the documents publicly filed with the SEC about the Transaction reveal—[Goldman, Sachs & Co.] [not (The Goldman Sachs Group, Inc.)] was CEC's advisor, and [The Goldman Sachs Group, Inc.] had no role in the Transaction.")

- November 12, 2015—Twin City Pipe's Response to Motion to Dismiss. ("GOLDMAN SACHS GROUP, INC. IS A PROPER DEFENDANT." Although Twin City Pipe recognized that "Goldman, Sachs & Co. ['GSCo'] served as the financial advisor on the Buyout," it asserted that The Goldman Sachs Group, Inc. was "properly named in the operative Petition.")

- February 14, 2016—Expiration of Statute of Limitations.

- March 23, 2016—Informal oral request made by Twin City Pipe to Special Master seeking to substitute Goldman, Sachs & Co. for The Goldman Sachs Group, Inc.

- March 1, 2017—Filing of Special Master Report.

- March 31, 2017—Twin City Pipe's motion for leave to file an amended petition to name "Goldman, Sachs & Co." as the defendant.

- May 21, 2017—Filing of [Proposed] Verified Amended Consolidated Class Action Petition.

- June 1, 2017—Twin City Pipe voluntarily dismisses with Counts I, II, and IV of the Consolidated Class Action Petition with prejudice—leaving only the claim of aiding and abetting against "The Goldman Sachs Group, Inc."

- November 20, 2017—Filing of Special Master's Supplemental Report.

20

- May 15, 2018—Nonevidentiary hearing held regarding the Motion to Dismiss.
- September 9, 2018—Memorandum Decision and Order dismissing the Consolidated Class Action Petition and denying Motion for Leave to Amend.

As such, it is apparent that Twin City Pipe knew or should have known well before the filing of the Consolidated Class Action Petition on July 21, 2015, that Goldman, Sachs & Co.—not The Goldman Sachs Group, Inc.—served as the financial advisor to CEC Entertainment during the acquisition process. Nevertheless, Twin City Pipe voluntarily chose to sue The Goldman Sachs Group, Inc. Furthermore, even after a motion to dismiss was filed, Twin City Pipe continued to assert that it had sued the correct defendant.

The first argument raised in The Goldman Sachs Group, Inc.'s Motion to Dismiss was that Twin City Pipe had sued the wrong party. It argued that it was unnecessary to reach the substantive deficiencies in the Consolidated Class Action Petition because Twin City Pipe had sued the wrong party. In fact, The Goldman Sachs Group, Inc. expressly pointed out—as revealed in "all of the documents publicly filed with the SEC about the Transaction"—that the financial advisor to CEC Entertainment was actually Goldman, Sachs & Co.

Notwithstanding, Twin City Pipe argued in its responsive brief filed on November 12, 2015, that "GOLDMAN SACHS GROUP, INC. IS A PROPER DEFENDANT." Specifically, Twin City Pipe asserted that it "believes that [The Goldman Sachs Group, Inc.] is properly named in the operative Petition . . . ." Moreover, Twin City Pipe did not claim to have made a mistake regarding the identity of the proper party. Instead, it candidly recognized that "Goldman, Sachs & Co. ('GSCo') served as the financial advisor on the Buyout."

21

Although Twin City Pipe indicated that it would seek leave to amend the Consolidated Class Action Petition "should the Court determine that [Goldman, Sachs & Co.] is the proper party-in-interest here," it waited until after the statute of limitations had expired to make an oral request to the Special Master to substitute Goldman, Sachs & Co. as the defendant. Even then, Twin City Pipe waited an additional 12 months before filing a motion for leave to file a [Proposed] Verified Amended Consolidated Class Action Petition seeking to add Goldman, Sachs & Co. as a defendant. By that time, the statute of limitations had expired more than one year before and the lawsuit had been on file for nearly three and a half years.

Consequently, the record does not disclose any "mistake concerning the identity of the proper party" as required under K.S.A. 2018 Supp. 60-215(c)(2). Twin City Pipe—which is represented by attorneys who are very experienced in the area of shareholder litigation—made a decision to sue The Goldman Sachs Group, Inc. (the parent company) instead of Goldman, Sachs & Co. Furthermore, the deliberate nature of its decision is highlighted by the fact that Twin City Pipe "doubled-down" on this course of action in its response to the motion to dismiss filed by The Goldman Sachs Group, Inc.

If it was truly the intent of Twin City Pipe to name Goldman, Sachs & Co. as a defendant, it had every opportunity to do so prior to the expiration of the statute of limitations and there is nothing in the record to indicate that this intent was thwarted by a good faith mistake in the identity of the proper defendant. In fact, in response to questions from this court during oral argument as well as in its reply brief, Twin City Pipe indicated that it did not sue Goldman, Sachs & Co. because it did not believe it could get personal jurisdiction over it in Kansas. In other words, Twin City Pipe acknowledges it made a deliberate—that is, strategic—decision to sue The Goldman Sachs Group, Inc. and not Goldman, Sachs & Co.

Although the rules of pleading are to be liberally construed, parties continue to have an obligation to comply with the applicable provisions of the Kansas Code of Civil Procedure. Moreover, we find the facts of the present case to be distinguishable from those in *Marr v. Gieger Ready-Mix Co.*, 209 Kan. 40, 495 P.2d 1399 (1972), *Hinds v. Estate of Huston*, 31 Kan. App. 2d 478, 66 P.3d 925 (2003), and *Anderson v. United Cab Co.*, 8 Kan. App. 2d 694, 666 P.2d 735 (1983). Each of those cases involved either a misnomer or other mistake regarding the proper identity of the defendant. Here, Twin City Pipe knew or should or known the proper identity of the defendant from the outset, argued that it had sued the proper party even after the error was pointed out, and failed to seek leave in a timely manner to add the proper party. Thus, similar to the plaintiffs in *Martindale*, *Srivastava*, and *Hoover*, Twin City Pipe should not be allowed to escape the consequences of its voluntary decision to proceed against The Goldman Sachs Group, Inc. instead of Goldman, Sachs & Co.

Although Twin City Pipe argues that we should look beyond Kansas law to resolve this issue, we do not believe it is necessary to do so since our Supreme Court and other panels of this court have spoken on the subject. Nevertheless, we recognize that in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541, 549-50, 130 S. Ct. 2485, 177 L. Ed. 2d 48 (2010), the United States Supreme Court addressed Federal Rule of Civil Procedure 15(c). In *Krupski*, the majority found that the "starting point" in the relation-back analysis should be on "what the prospective *defendant* knew or should have known . . . not what the *plaintiff* knew or should have known at the time of filing [its] original complaint." 560 U.S. at 548. However, the majority in *Krupski* also found—similar to our Supreme Court in *Martindale*—"that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties *is the antithesis of making a mistake concerning the proper party's identity*." (Emphasis added.) 560 U.S. at 549. In addition, the majority in *Krupski* found that "[t]o the extent the plaintiff's postfiling conduct informs the prospective defendant's

understanding of whether the plaintiff initially made a 'mistake concerning the proper party's identity,' a court may consider the conduct." 560 U.S. at 554.

In this case, we find the result is the same whether we look at the issue from the perspective of Twin City Pipe or from the perspective of Goldman, Sachs & Co. Even if we view the issue presented from the perspective of what the prospective defendant knew or should have known, we find nothing in the record to suggest that Goldman, Sachs & Co. "knew or should have known that, but for a mistake concerning the identity of the proper party," it would have been sued. Based on our review of the record, we conclude that it was reasonable for Goldman, Sachs & Co. to believe that the deliberate choice made by Twin City Pipe to sue its parent company was not a result of a mistake concerning the proper party's identity.

In support of this conclusion, we note that the conduct of Twin City Pipe after the filing of the Consolidated Class Action Petition speaks loudly to Goldman, Sachs & Co.'s understanding of whether it "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." K.S.A. 2018 Supp. 60-215(c)(3)(B). As discussed above, The Goldman Sachs Group, Inc. raised the issue regarding the proper identity of the financial advisor in its motion to dismiss filed several months prior to the expiration of the statute of limitations. Had this truly been a case of mistaken identity, it is reasonable to assume that Twin City Pipe would have immediately taken action to correct the mistake.

Moreover, Twin City Pipe unequivocally recognized in its response to the motion to dismiss that "Goldman, Sachs & Co. . . . served as the financial advisor on the Buyout." It also continued to argue that "GOLDMAN SACHS GROUP, INC. IS A PROPER DEFENDANT." And Twin City Pipe continued to assert its belief that The Goldman Sachs Group, Inc. was properly named in the Consolidated Class Action Petition. Far from claiming that a mistake had been made regarding the identity of the

24

proper party, Twin City Pipe chose not to take any action to seek leave to amend the Consolidated Class Action Petition until after the limitations period had already expired.

Accordingly, we conclude that the [Proposed] Verified Amended Consolidated Class Action Petition does not relate back to the filing on the Consolidated Class Action Petition under K.S.A. 2018 Supp. 60-215(c)(2). As a result, granting leave to Twin City Pipe to file the [Proposed] Verified Amended Class Action Petition would be pointless and the district court did not abuse its discretion in denying the motion for leave to amend. In light of this decision, it is unnecessary for us to reach the other issues presented by the parties on appeal. We, therefore, we affirm the judgment of the district court.

Affirmed.